399 P.2d 426

**STATE of Arizona, Appellee,**

**v.**

**Richard Alfred KANANEN and Larry Vernon Hill, Appellants.**

**No. 1310.**

Supreme Court of Arizona.

En Banc.

Feb. 25, 1965.

Robert W. Pickrell, Atty. Gen., Jerry W. Lawson, Asst. Atty. Gen., for appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, by Calvin C. Thur, Scottsdale, for appellants.

McFARLAND, Justice.

Appellants, Richard Alfred Kananen and Larry Vernon Hill, hereinafter referred to as defendants, were each convicted on four counts of forgery, and sentenced to serve from seven to ten years on each count, to run concurrently. From the judgment and sentence they appeal.

Defendants were arrested at Montgomery Ward's Chris-Town store in Phoenix, Arizona, at about 6:30 p. m., December 2, 1961, attempting to cash a forged check drawn on the First National Bank of Arizona, payable to David S. Olson, signed by J. B. Andrews, Treasurer, Lytle Eng. Co., Inc. It was shown the Lytle Eng. Co. was non-existent, and no account existed in the bank for either the company or J. B. Andrews. Defendant Kananen, in attempting to cash the checks, presented identification that he was Olson. He had passed checks to Korrick's, Sears Roebuck and Co., and Montgomery Ward's downtown store. Two more checks identical in nature were found on the person of defendant Kananen. Also found was a wallet on the person of defendant Hill bearing identification of Richard Alfred Kananen. Hill stated that the wallet belonged to Kananen.

Defendants were questioned and searched by Officer Don Rodriguez while at the store. Among other articles obtained from them was a key to Room 28 of the Montezuma Motel in Phoeniz, Arizona, which was in the possession of defendant Hill. Defendants were then taken to jail.

Officer Rodriguez testified that both defendants stated at the store that the checks were no good, and also that defendant Kananen made a similar statement while in jail. At about 10:30 p. m. that same night the officers Rodriguez and Robert Morris picked up defendant Hill at the jail, Rodriguez stating that he obtained

permission from Hill to search the room of the motel. The officers handcuffed Hill and took him to the Montezuma Motel, and, in the presence of the manager of the motel, searched Room 28. Several items were found in the room, including a checkwriter, a typewriter, and several blank checks which were introduced in evidence. The motel manager testified that Hill was registered in Room 28 under the name of Olson. There was testimony that Hill stated to police officers on several occasions that he and Kananen were staying at the motel in Room 28.

The officers did not have a search warrant. A handwriting expert testified that defendant Hill had signed the name of J. B. Andrews on the checks, and that all four endorsements on the checks were written by the same person.

Defendants contend that the court erred in admission of the evidence obtained by search of the room without a search warrant, including a checkwriter, a typewriter, and blank checks, over the objection of defendants, and erred in denying defendants' motion for a new trial, based upon the admission of such evidence obtained by the search and seizure. The state contends that the claim of unreasonable search and seizure was waived by consent.

 In determining whether or not there was a consent, it is necessary that such a waiver or consent be proved by clear and positive evidence in unequivocal words or conduct expressing consent, and it must be established that there was no duress or coercion, actual or implied. State v. Tigue, 95 Ariz. 45, 386 P.2d 402; State v. Robinson, 74 N.J.Super. 305, 181 A.2d 208.

The question then is whether the state proved consent by clear and positive evidence in unequivocal words or conduct expressing consent. After Officer Rodriguez had testified that defendants had been placed under arrest, in response to questions asked by the deputy county attorney, he gave the following testimony:

"Q Then what occurred—Did you see the defendants subsequent to that date, later that day, that same day?

  *    *    *    *    *    *

"A Yes, I did.

"Q Sir, did you have an opportunity to find any other articles on Mr Hill besides Mr. Kananen's wallet?

"A Yes, sir, I did.

"Q What was that?

"A That was a key to Room 28 at the Montezuma Motel.

"Q Subsequent—Did you see Mr. Hill again or Mr. Kananen?

"A Yes, I saw Mr. Hill.

"Q Where was that?

"A This was at the Police Department.

"Q And what took place there, if anything?

"A Mr. Hill and Detective Robert Morris and myself went to the Montezuma Motel, Room 28.

"Q And did you ask Mr. Hill's permission to go to this room?

"A Yes, I did.

"Q And when you went to the room, in whose company were you besides the officer and Mr. Hill?

"A A Mr. Winch, who is a clerk at the Montezuma Motel, was also present.

"Q Did you make a search of the premises at 28, Room 28, in the Montezuma Motel, sir?

"A Yes, sir."

And, then, in answer to questions on voir dire examination, he testified:

"Q You testified that from Montgomery Wards Chris-Town, the defendants were taken to jail. Did you accompany them to jail?

"A No, sir, I didn't.

\* \* \* \* \* \*

"Q And you said you later saw them at the jail or at least you saw the defendant Hill at the jail; is that correct?

"A That is correct, yes.

"Q What time was that?

"A That was approximately 10:30.

"Q The same evening?

"A Yes.

"Q Now, from there, you took the defendant Hill to the Montezuma Motel, is that correct?

"A He accompanied us there, yes.

"Q Well, was he given a choice?

"A Yes, he was.

"Q As to whether or not he wanted to go or not?

"A Yes.

"Q Did you have him restrained in any way?

"A We had him handcuffed, yes.

"Q Did you have a search warrant?

"A No, sir.

"Q Why not?

"A We went in with Mr. Hill's permission."

And, on cross-examination:

"Q How did you come about to accompany the defendant Hill to the Montezuma Motel?

"A While at Montgomery Wards, while finding this key in Mr. Hill's possession, and he advising me that he and Kananen were staying at the Montezuma in this particular room, I talked to him privately and asked him if he would accom-

pany us to the Montezuma Motel, which at that time he said he would.

"Q Did he at any time question your right to take him to this room or ask if he had a choice in the matter?

"A Do you mean if he refused to take us out there?

"Q All right—Did he refuse?

"A No, he did not.

"Q Did he consent without reservation?

"A He agreed to accompany us to the motel."

The questions and answers in regard to the giving of consent were "And did you ask Mr. Hill's permission to go to this room?" "Yes, I did." And, on voir dire, "Did you have a search warrant?" "No, sir." "Why not?" "We went in with Mr. Hill's permission." Then, on cross-examination, after answering the question as to whether Hill refused to go out to the room, and stating that he did not, this question and answer ensued: "Did he consent without reservation? He agreed to accompany us to the motel."

█ It will be noted that the question was not asked of Hill as to whether he consented to a search of the room. The officer only stated that he asked Mr. Hill's permission to go to this room. He did not testify as to what the answer was. The most that one could say would be that the answer implied that consent was given. The statement that "We went in with Mr. Hill's permission," was merely a conclusion. Neither meets the test of "clear and positive evidence in unequivocal words," nor does accompanying the officers to the room, hours after arrest, and while handcuffed, amount to positive proof of consent. There must not be duress, coercion—actual or implied.

In Judd v. United States, 89 U.S.App.D. C. 64, 190 F.2d 649 (D.C.Cir.1951), the court held:

"Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D. C.S.D.Ill.1921, 272 F. 484. The Government show show a consent that is 'unequivocal and specific' (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), 'freely and intelligently given.' Kovach v. United States, 6 Cir., 53 F.2d

**238**

639. Thus 'invitations' to enter one's house, extended to armed· officers of the law who demand entrance, are usually to be considered as invitations secured by force. United States v. Marquette, D.C.N.D.Cal.1920, 271 F. 120. A like view has been taken where an officer displays his badge and declares that he has come to make a search (United States v. Slusser, D.C. S.D.Ohio 1921, 270 F. 818), even where the householder replies 'All right.' United States v. Marra, D.C. W.D.N.Y.1930,.40 F.2d 271. A finding of consent in such circumstances has been held to be 'unfounded in reason'. Herter v. United States, 9 Cir., 27 F.2d 521. Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent."

It will be noted that the court, in the summarization of the statement of defendant, said:

"I have nothing to hide. You can go there and see for yourself. Conceivably, that is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But, however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant."

In State v. Robinson, supra, in which the Judd case was quoted with approval, it will be noted that the officer testified that one of the defendants, Josephine Robinson, said it was all right to make the search, which was denied by the defendant. However, the court said:

" * * * even if the police officer's allegation is correct, still, it has not been established that there .was no duress or coercion, either actual or implied. Intimidation and duress are almost necessarily implicit in a situation such as this involving a woman with no showing of any previous experience nor any indication of knowledge of her ·constitutional rights."

Applying the rule as set forth in the Judd and Robinson cases, the state fell short of proving consent. The state, in its brief, also contended that defendants having failed to move to suppress the evidence may not raise the question of unreasonable search and seizure on appeal.

The state cited State v. Quintana, 92 Ariz. 267, 376 P.2d 130, in support of its contention that the defendants had waived their right·to object to the introduction of evidence obtained by unreasonable search and seizure in that they did not at the time make a motion to suppress the evidence. Some of the courts hold that failure to

make a motion to suppress evidence is a waiver; however, the courts are divided on this question.

In the Quintana case, supra, in which we quoted with approval a quotation from State v. Robbins, 37 Wash.2d 431, 224 P.2d 345, we stated:

"With regard to appellant's contention that the court erred in refusing to hear arguments on his objections to the admissibility of the evidence during the proceeding of the trial we cite State v. Robbins, 37 Wash.2d 431, 224 P.2d 345 (1950), where it was said at page 346:

" 'Where, during the trial, the seized articles are offered in evidence, and it does not appear from the state's testimony, or otherwise, that such articles were unlawfully seized, and objection is made to the introduction of such evidence, on the ground that it was unlawfully seized, and the defendant offers, by affidavit, or otherwise, to prove such unlawful seizure, the court should receive the articles in evidence, because it will not, at that stage of the proceedings, stop to investigate the disputed circumstances under which the articles were seized. When a defendant desires to suppress as evidence, the articles taken, he must, within a reasonable time before the case is called for

trial, move for such suppression and thus give the court an opportunity to try out the disputed question of fact.'

"The same ruling was made in State v. Lord, Mo., 286 S.W.2d 737 (1956); and in State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878 (1942)."

It will be noted that the contention was in regard to the refusal of the court to hear arguments on the objection to admissibility of evidence in the proceedings of the trial. In State v. Robbins, supra, there was an objection made to the introduction of evidence on the ground that it was unlawfully seized, and defendant offered by affidavit or otherwise to prove such unlawful seizure. The court had just stated in the previous paragraph that:

"Where, by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence have been unlawfully seized, it is the duty of the trial court, upon objection, to refuse to receive them in evidence. There being no question of fact under such circumstances, and nothing to require the court to stop in the midst of the trial to try a collateral fact, the court has only to rule on the admissibility of evidence upon admitted or conceded facts."

The court specifically stated that if the evidence showed that the articles which were offered in evidence have been unlawfully seized it was the duty of the court, if it were shown by direct or proper cross-examination of the state's witness, not to receive them in evidence.

■ We are of the opinion that it is a better practice for defendant to make a motion before trial to suppress evidence which was illegally obtained. However, if he fails to do so, he is not precluded from objecting to the evidence if it appears therefrom, either from direct or cross-examination, that the search and seizure was unreasonable. We therefore hold that the court erred in the admission of the evidence obtained by the search and seizure.

Some of the Federal courts hold that failure to make a motion to suppress evidence is a waiver, but they are based upon Rule 41(e) of Federal Rules of Criminal Procedure which provides that a motion "alleged to be the product of an unlawful search and seizure 'shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion.'" United States v. Watts, 2 Cir., 319 F.2d 659, 660.

We do not have such a rule in Arizona, however. We think the better rule is stated in Brown v. State, 277 Ala. 108, 110, 167 So.2d 291, 293, in which the court held:

"The state's second contention is that the Court of Appeals erred in considering the admissibility of illegally obtained evidence where defendant did not make a motion to suppress that evidence prior to trial.

"Annotation on the necessity of pre-trial motion to suppress illegally obtained evidence appears in 50 A.L.R.2d at page 583. The annotator notes that the authorities are divided.

"If illegally obtained evidence is inadmissible before the trial, it is still inadmissible at the trial if the circumstances have not changed. We are of opinion that the better rule is that a pretrial motion to exclude is not necessary."

This is a federal question, and as we pointed out in State v. Piña, 94 Ariz. 243, 245, 383 P.2d 167, 168:

"The decisions of the Supreme Court of the United States interpreting the Federal Constitution are the law of the land applicable to all alike."

In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the Supreme Court of the United States specifically overruled the Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 decision, and held that evidence obtained in violation of rights guaranteed by the Fourth Amendment are not admissible in the state court in a prosecution against an

individual whose rights had been violated. We accordingly reversed our position. State v. Piña, supra.

It has been the position of this court that the decisions of the United States Supreme Court must be followed in regard to admissibility of evidence involving such a federal question. In the latest decision, Henry v. State of Miss., 85 S.Ct. 564, Jan. 18, 1965, which involved evidence obtained by search and seizure, the court held:

"A procedural default which is held to bar challenge to a conviction in state courts, even on federal constitutional grounds, prevents implementation of the federal right. Accordingly, we have consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question. Cf. Lovell v. City of Griffin, 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949. As Mr. Justice Holmes said:

"'When as here there is a plain assertion of federal rights in the lower court, local rules as to how far it shall be reviewed on appeal do not necessarily prevail. * * * Whether the right was denied or not given due recognition by the [state court] * * * is a question as to which the plaintiffs are entitled to

invoke our judgment.' Love v. Griffith, 266 U.S. 32, 33–34, 45 S.Ct. 12, 69 L.Ed. 157.

"Only last Term, we reaffirmed this principle, holding that a state appellate court's refusal, on the ground of mootness, to consider a federal claim, did not preclude our independent determination of the question of mootness; that was itself a question of federal law which this Court must ultimately decide. Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347."

After discussing the Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence, the court, in remanding the case, stated:

"We vacate the judgment of conviction and remand for a hearing on the question whether the petitioner is to be deemed to have knowingly waived decision of his federal claim when timely objection was not made to the admission of the illegally seized evidence."

In the instant case the objection at the trial by defendants to the admission of evidence obtained by the search and seizure is timely under the ruling of Henry v. State of Miss., supra.

■ Defendants, in their supplemental and reply brief, contend that under the terms of the conditional order of the Su-

perior Court of the State of Arizona in and for the County of Pinal in Cases No. 17260 and No. 17279 under which they were admitted to bond, they should be granted immunity from prosecution in these matters, and that their conviction should be expunged. We have examined the order and the record submitted by defendants in the above cases, and do not agree with this interpretation.

Judgment is reversed, and remanded to the lower court for proceedings not inconsistent with this opinion.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concurring.