214 P.3d 444

**Jose CARRILLO, Petitioner,**

v.

**The Honorable Robert HOUSER, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Phoenix City Prosecutor's Office, Real Party in Interest.**

**No. 1 CA–SA 09–0042.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 1, 2009.

Law Office of Nicole Farnum By Nicole T. Farnum, Tempe, Attorneys for Petitioner.

Aaron J. Carreon–Ainsa, Phoenix City Prosecutor By Gary L. Shupe, Assistant City Prosecutor, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SWANN, Judge.

¶ 1 Arizona's Implied Consent Law, A.R.S. § 28–1321, requires the state to obtain a warrant before drawing a blood sample from a DUI suspect unless the suspect "expressly agree[s]" to submit to the blood test. A.R.S. § 28–1321(B), (D) (Supp.2005). We hold that the "express agreement" required by the statute must be affirmatively and unequivocally manifested by words or conduct, and may not be inferred from a suspect's mere failure to communicate clear objection to the test.

### I. FACTS AND PROCEDURAL HISTORY

¶ 2 On December 31, 2006, Carrillo was arrested for (1) DUI, (2) driving with a Blood Alcohol Content over .08, (3) extreme DUI, (4) failure to provide identification, and (5) leaving the scene of an accident. After his arrest, Carrillo was vomiting, and therefore unable to participate effectively in a breath test. While he was sitting on the steps of a DUI van, an officer placed a large toolbox on Carrillo's lap and another officer drew a blood sample. No warrant preceded the blood draw.

¶ 3 Before trial, Carrillo moved to suppress the results of his blood test, and the trial court held an evidentiary hearing. Carrillo testified that he did not speak English and that none of the officers spoke to him in Spanish, his native language. He also testified that the officers took his arm to draw his blood, but he did not give consent for the draw. He stated that he only allowed the blood to be drawn out of fear. All of the officers testified that they were not certified Spanish translators, but that they were able to communicate with Carrillo in basic Spanish and with gestures. No one testified that Carrillo was "requested" to submit to the test. The state presented testimony that the officers told Carrillo "that we were going to take his blood," to which Carrillo responded by holding out his arm. Another officer testified that he used the Spanish word for blood when he indicated that he was going to draw Carrillo's blood. The testimony was

undisputed that Carrillo offered no active resistance to the test.

¶ 4 The court found that "[t]here was nothing by Mr. Carrillo's conduct that indicated to the officers that he was refusing to consent to the test." Based on that finding, the court denied the motion to suppress. Carrillo waived trial and submitted the matter to the court for decision based on the documentary record. The court acquitted Carrillo on the charge of failure to provide identification, and found him guilty of all other charges. Carrillo timely appealed to the superior court, which affirmed the trial court's suppression ruling, judgment and sentence. Carrillo then filed this petition for special action relief.

## II. JURISDICTION AND STANDARD OF REVIEW

¶ 5 Carrillo lacks any further remedy by direct appeal. *See* A.R.S. § 22–375(B) (2002). We accept special action jurisdiction because the petition presents a legal question of statewide importance, the resolution of which will provide guidance in the interpretation of the Implied Consent Law, A.R.S. § 28–1321. *See Guthrie v. Jones*, 202 Ariz. 273, 274, ¶ 4, 43 P.3d 601, 602 (App.2002).

■■■ ¶ 6 Generally, we review a trial court's denial of a motion to suppress for an abuse of discretion. *State v. Olquin*, 216 Ariz. 250, 252, ¶ 10, 165 P.3d 228, 230 (App. 2007). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12, 90 P.3d 793, 796 (App.2004) (citing *Gorman v. City of Phoenix*, 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987); *State v. Fields*, 196 Ariz. 580, 582, ¶ 4, 2 P.3d 670, 672 (App.1999)).[1] We review *de novo* the legal questions that underlie the court's decision of a motion to suppress, including whether a warrantless blood draw complied with the Fourth Amendment.

*State v. Flannigan*, 194 Ariz. 150, 152, ¶ 12, 978 P.2d 127, 129 (App.1998). Where, as here, we must interpret a statute to determine whether consent to a search existed, our review is *de novo*. *See State v. Gonzalez*, 216 Ariz. 11, 12, ¶ 2, 162 P.3d 650, 651 (App. 2007) (issues of statutory interpretation reviewed *de novo*); *State v. Flores*, 195 Ariz. 199, 203, ¶ 11, 986 P.2d 232, 236 (App.1999) (we review *de novo* whether an individual who is not the owner may give valid consent to search a vehicle). Finally, we review the voluntariness of the consent to a search as a question of fact determined in view of the totality of the circumstances. *State v. Paredes*, 167 Ariz. 609, 612, 810 P.2d 607, 610 (App.1991).

## III. DISCUSSION

■■ ¶ 7 Carrillo contends that the trial court's misapplication of Arizona's Implied Consent Law allowed the state to circumvent the Fourth Amendment's requirement that consent to a search be given freely and voluntarily. He also argues that consent cannot be inferred from his conduct in this case.

¶ 8 Our decision in this case is based on the plain language of the Implied Consent Law—there is no conflict between the statute and any constitutional provision. Despite its popular name, the statute does not eliminate the need for search warrants in all cases by "implying consent" to search. Instead, the Arizona Legislature has carefully defined a procedure that requires the state to secure *express* consent to a blood test after arrest. When there is no express consent, the statute subjects the driver to civil sanctions and allows the state to obtain a search warrant to proceed with the test. The question presented by this case is whether the express consent can be inferred from the mere failure to refuse.

¶ 9 A.R.S. § 28–1321(A) provides that "[a] person who operates a motor vehicle in this state gives consent . . . to a test or tests of

---

1. The phrase "abuse of discretion" is inelegant, because it sweeps within its pejorative tone categories of error that do not involve any culpable "abuse" of the discretion entrusted to the court. *See State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1228 n. 18 (1983). Here, for example, the court's exercise of discretion was grounded in a faulty legal premise that affected its analysis. Such an error can necessitate reversal under the abuse of discretion standard without being "manifestly unreasonable" or otherwise offensive to the proper function of the trial court. *See, e.g., State v. Woody*, 173 Ariz. 561, 845 P.2d 487 (App.1992).

the person's blood, breath, urine or other bodily substance" if arrested for an alcohol-related offense while driving. This provision eliminates a driver's unfettered *right to* refuse to submit to a test, but it does not affect the *power to* refuse. *See State ex rel. Verburg v. Jones,* 211 Ariz. 413, 415, ¶¶ 8–9, 121 P.3d 1283, 1285 (App.2005). While a pure right could be exercised with impunity, exercise of the mere power to refuse subjects a person to automatic penalty-suspects who refuse a test are subject to civil sanctions, including the suspension of their drivers' licenses. Therefore, rather than implying an irrevocable consent to search as a matter of law, subsection (A) civilly penalizes those who do not reaffirm their implied consent after arrest. Under the statute, however, the decision whether to consent remains that of the arrested driver.

¶ 10 Subsections (B) and (D) work together to implement these principles in practice. A.R.S. § 28–1321(B) provides:

> After an arrest a violator *shall be requested* to submit to and successfully complete any test or tests prescribed by subsection A of this section, and if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended or denied ... *unless the violator expressly agrees* to submit to and successfully completes the test or tests. *A failure to expressly agree to the test or successfully complete the test is deemed a refusal.*

(Emphases added.) Pursuant to this section, after the state requests that the suspect participate in the test, the suspect may either "expressly agree" or "refuse." If the suspect does not expressly agree, then the statute provides that "[t]he test *shall not be given,* except ... pursuant to a search warrant." A.R.S. § 28–1321(D)(1) (emphasis added).[2]

¶ 11 DUI arrests frequently occur in circumstances that do not lend themselves to clear discourse. Communication between the arresting officer and the suspect may be impeded by any number of factors, including lack of English proficiency and, of course, intoxication. In any given case, the request for consent may be difficult or impossible to communicate and the response (if any) may be ambiguous. The Legislature recognized this reality, and prescribed a straightforward solution. By providing that "[a] failure to expressly agree to the test ... is deemed a refusal," the Legislature made clear that the failure to refuse is not agreement—rather, the failure to agree is refusal. In this case, the trial court found that Carrillo did not indicate "that he was refusing to consent to the test." The court's conclusion that Carrillo's non-refusal constituted agreement requires reversal, because it applied the incorrect legal standard.[3]

¶ 12 A.R.S. § 28–1321 is wholly consistent with the standards for consent that have evolved to permit warrantless searches in other contexts. When a warrantless search is supported by consent, the state must establish that the suspect "unequivocally," by his words or conduct, expressed consent to the search.[4] *See State v. Canez,* 202 Ariz. 133, 151, ¶ 53, 42 P.3d 564, 582 (2002); *State v. Kananen,* 97 Ariz. 233, 235, 399 P.2d 426, 427 (1965) ("In determining whether or not there was a consent, it is necessary that such a waiver or consent be proved by clear and positive evidence in unequivocal words or conduct expressing consent, and it must be established that there was no duress or coercion, actual or implied.").

¶ 13 On appeal from the trial court's order, the superior court determined that "actual consent to the test was established by clear

---

2. A.R.S. § 28–1321(D)(1) also provides for the preservation of samples taken by qualified medical professionals. Because this case does not implicate the medical exception, we limit our discussion to the warrant exception.

3. In a different context, we have recognized that a "failure to refuse" is not the equivalent of consent under A.R.S. § 28–1321. *See State v. Stanley,* 217 Ariz. 253, 258, ¶ 23, 172 P.3d 848, 853 (App.2007).

4. There is, of course, no requirement that the officers speak the same language as the person whose consent they are trying to obtain. Where effective communication by spoken language is not possible, other means of communication may still suffice, and the suspect may express unequivocal consent by gestures or conduct.

and positive evidence of unequivocal conduct." While such a finding would comport with the applicable legal standard (and might well be possible on remand), the trial court did not make that finding. Sitting as an appellate court, the superior court was not in a position to recast the trial court's finding that Carrillo did not refuse the test as a finding that he unequivocally consented. Where the record contains an express finding by the trial court based upon the incorrect legal standard, a reviewing court cannot presume consent.

## CONCLUSION

¶ 14 For the foregoing reasons, we vacate Carrillo's convictions and remand for a determination of whether Carrillo consented to submit to the blood draw in accordance with the Implied Consent Law.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge.

IRVINE, Judge, dissenting.

¶ 15 I agree with the majority that Arizona's Implied Consent Statute does not authorize the police to draw blood from a person arrested for DUI without either the person's consent or a search warrant.[5] Under the statute, a driver arrested for DUI impliedly consents to have his driver's license suspended if he does not give actual consent to a chemical test of his blood. A.R.S. § 28–1321(D). Informed of this consequence, a driver may give actual, albeit grudging, consent to the test to avoid a license suspension. The statute is clear, however, that the "implied consent" provided by law is no substitute for actual consent, whether directly stated through words or implied from the driver's conduct. Under the statute, if a person under arrest does not actually consent to a test the "test shall not be given, except … pursuant to a search warrant." A.R.S. § 28–1321(D)(1). Consequently, I reject the State's argument that Carrillo's consent to the blood draw can be implied as a matter of law.

¶ 16 Therefore, the central question in this case is whether Carrillo gave actual consent. The officers testified that they attempted to explain to Carrillo in Spanish and with gestures that they wanted to draw his blood. They further testified that Carrillo held out his arm and cooperated throughout the test. They testified they did not use force, coercion or pressure to obtain Carrillo's cooperation and he never indicated any objection through words or actions. Carrillo testified that no Spanish was used and the officers took his arm. Under these circumstances, whether there was actual consent hinges on the credibility of the witnesses.

¶ 17 We must view the evidence in the light most favorable to sustaining the trial court's ruling. *State v. Stanley*, 167 Ariz. 519, 525, 809 P.2d 944, 950 (1991). Moreover, "[w]e will not disturb a trial court's ruling on a motion to suppress absent an abuse of discretion." *State v. Olquin*, 216 Ariz. 250, 252, ¶ 10, 165 P.3d 228, 230 (App. 2007). "Accordingly, we will defer to the trial court's assessment of witness credibility because the trial court is in the best position to make that determination." *Id.*

¶ 18 The trial court denied the motion to suppress. Viewing the evidence in the light most favorable to sustaining that ruling, I find no error. Although best practices would counsel the officers to obtain consent through an interpreter, or to secure a warrant, the evidence here is sufficient to support a finding of actual consent. The presence of evidence that can be interpreted as showing actual consent distinguishes this case from *State v. Flannigan*, 194 Ariz. 150, 978 P.2d 127 (App.1998), cited by Carrillo, in which the record contained no evidence of consent.

¶ 19 The majority finds error because the trial court did not make an express finding that Carrillo affirmatively consented to the blood draw, and orders that the case be

**5.** Warrantless blood draws without consent are allowed under certain circumstances, none of which apply here. A.R.S. § 28–673(F) (Supp. 2008) (person who caused accident involving death or serious physical injury is dead or unconscious); A.R.S. § 28–1321(C) (person arrested for DUI who is dead or unconscious); A.R.S. § 28–1388(E) (2004) (if there is probable cause to believe person violated DUI statute and sample is taken for any reason, a portion shall be provided to law enforcement officer).

remanded for such a determination. Again, best practices would be for the trial court to make such an express finding when the validity of the search hinges on consent. Nevertheless, we do not require such precision on appellate review. When a motion to suppress challenges a blood draw based on lack of consent, and the trial court denies that motion, our standard of review requires us to affirm unless there is an abuse of discretion. Failing to make an express finding when denying the motion to suppress is not an abuse of discretion.

¶ 20 Carrillo argues, however, and the majority agrees, that the trial court applied the wrong standard by equating actual consent with non-refusal. I disagree. Carrillo argued he did not consent to the search, either actually or under the Implied Consent Statute. The State responded that he did consent, actually and under the Implied Consent Statute. Both parties used the phrase "implied consent" rather loosely to refer to both "implied in law" and "implied in fact," so the arguments to the court were sometimes less than precise. Immediately after hearing the evidence and arguments, the trial court made an oral ruling from the bench. That ruling, in its entirety, provided:

> Well, the law in the State of Arizona is that a person who operates a motor vehicle in the state gives consent to a test, or tests of a person's blood, breath, urine, other bodily substance for the purpose of determining alcohol concentration or drug content. If the person is arrested for any offense arising out of acts alleged to have been committed in violation of this chapter, chapter 28.
>
> And we have that situation here in this case. Mr. Carrillo was under arrest for DUI. And so under Arizona law there is the implied consent law, which basically says as I just read. Defense counsel's argument is that even though Arizona has the implied consent law, the Defendant still has a right to know what is happening to him. And he has a right to decide whether or not he wants to consent to the test. And in this case he did not expressly consent. And any evidence obtained was obtained illegally and unconstitutionally and should therefore be suppressed.
>
> In a perfect world in a preferred situation it is preferred that anyone who is arrested and accused of a crime knows what is going on with them during the time of the arrest. That they are spoken to in their native language. And they are able to understand what's happening. And ideally that would be the case, but that's not the law. There is no law that requires the officers to speak Spanish, or to speak in Spanish to the Defendant, unless they are conveying constitutional rights, such as Miranda warnings, which they did not do in this case.
>
> The officers testified that they made signals, or body motions indicating to the Defendant how they wished him to act. The Defendant says that the officers just grabbed his arm and did not reach it out for—or put it out for the tourniquet to be placed on it. But the law does not require the officers to read the admin per se to any defendant, whether Spanish speaking or not unless the defendant refuses to submit to the test, blood or breath test. There was nothing by Mr. Carrillo's conduct that indicated to the officers that he was refusing to consent to the test. There was nothing by any words that he said that indicated that he wished to refuse to submit to the test. The defendant doesn't have the right to refuse an implied consent test, or a blood or breath test in a DUI case. He just has the power to do so. And if he chooses to exercise that power then the officers are required to read the implied consent law to the defendant.
>
> The Arizona Supreme Court has held that the implied consent law is a proper vehicle for regulating the use of Arizona highways and has found that it's not in any violation of any due process rights.
>
> So based on those conclusions the Court is denying the motion to suppress.

¶ 21 I do not read the trial court's ruling as applying the wrong legal standard. The trial court plainly considered the conflicting testimony of the witnesses. Although the court also discussed Carrillo's failure to refuse the test, this appears to have been only one

factor in its analysis, not the determinative legal standard found to be erroneous by the majority. In argument, the parties jumped back and forth in their discussion regarding actual consent and implied consent. It is not surprising that the trial court also did so in its oral ruling. The result was a ruling that was less precise than it could have been, but, given our standard of review, it is not reversible error.[6] We should not find an abuse of discretion simply because we suspect the trial court used the wrong legal standard. We should only do so if the record plainly shows the error. The record before us does not.

¶ 22 By remanding for a determination by the trial court of whether Carrillo consented to a blood draw the majority implicitly recognizes that the evidence in the record is sufficient to sustain the denial of the motion to suppress. As noted above, an appellate court must "view the facts in the light most favorable to sustaining the trial court's ruling." *Stanley*, 167 Ariz. at 525, 809 P.2d at 950. Moreover, we will uphold the trial court's ruling if legally correct for any reason supported by the record. *State v. Canez*, 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002). Because I do not find that the trial court applied the wrong legal standard, I would deny the relief requested in the petition for special action. Therefore, I respectfully dissent.

---

**6.** The majority also rejects the superior court's conclusion that "actual consent to the blood test was established by clear and positive evidence of unequivocal conduct." *See supra* at ¶ 13. The superior court's actual holding was: "Viewing the evidence in a light most favorable to upholding the trial court's ruling, Defendant's actual consent to the test was established by clear and positive evidence of unequivocal conduct." I do not read this as the superior court making a finding of fact when the trial court did not, but as a determination that the facts supported the trial court's ruling under the applicable legal standards.