SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JOSE CARRILLO, | ) Arizona Supreme Court |
| | ) No. CV-09-0285-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-SA 09-0042 |
| THE HONORABLE ROBERT HOUSER, | ) |
| JUDGE OF THE SUPERIOR COURT OF | ) Maricopa County |
| THE STATE OF ARIZONA, in and for | ) Superior Court |
| the County of Maricopa, | ) No. LC2008-000551-001 DT |
| | ) |
| Respondent Judge, | ) Phoenix Municipal Court |
| | ) No. 20079002017 |
| | ) |
| PHOENIX CITY PROSECUTOR'S OFFICE, | ) |
| | ) |
| | ) |
| Real Party in Interest. | ) **O P I N I O N** |
| | ) |
| _____ | ) |

Appeal from the City of Phoenix Municipal Court
The Honorable Carol Berry, Judge

**REMANDED**
_____


Special Action from the Superior Court in Maricopa County
The Honorable Robert C. Houser, Judge

**VACATED**
_____

Opinion of the Court of Appeals, Division One
222 Ariz. 356, 214 P.3d 444 (2009)

**VACATED**
_____

LAW OFFICE OF NICOLE FARNUM                                    Tempe
     By   Nicole T. Farnum
Attorney for Jose Carrillo

AARÓN J. CARREÓN-AÍNSA, PHOENIX CITY PROSECUTOR          Phoenix
     By   Gary L. Shupe, Assistant City Prosecutor
Attorneys for Phoenix City Prosecutor's Office

LAW OFFICE OF STEPHEN PAUL BARNARD, P.C.                 Tucson
     By   Stephen Paul Barnard

And

THE LAW FIRM OF NESCI & ST. LOUIS, P.L.L.C.             Tucson
     By   Joseph P. St. Louis
Attorneys for Amicus Curiae Arizona Attorneys for
Criminal Justice
_____

**B A L E S**, Justice

¶1      Under Arizona's implied consent law, A.R.S. § 28-1321 (Supp. 2009), a person arrested for driving under the influence is asked to submit to testing, such as a blood draw, to determine alcohol concentration or drug content.  If the arrestee refuses the test – and the statute deems a failure to expressly agree to be a refusal - the arrestee's license is administratively suspended.  We today hold that the statute generally does not authorize law enforcement officers to administer the test without a warrant unless the arrestee expressly agrees to the test.

**I.**

¶2      Arizona's implied consent law begins by stating that a "person who operates a motor vehicle in this state gives consent" to a test "for the purpose of determining alcohol concentration or drug content" if he or she is arrested for

2

"driving . . . under the influence of [alcohol] or drugs."

A.R.S. § 28-1321(A).[1] Despite this broad statement, the next

subsection of the statute provides, in part, that:

> After an arrest a violator shall be requested to submit to and successfully complete any test [to determine alcohol concentration or drug content], and if the violator refuses the violator shall be informed that the violator's license . . . will be suspended . . . unless the violator expressly agrees to submit to and successfully completes the test or tests. A failure to expressly agree to the test or successfully complete the test is deemed a refusal.

*Id.* § 28-1321(B). The statute also provides that if the

arrestee "refuses to submit" the test generally shall not be

given except pursuant to a search warrant. *Id.* § 28-1321(D)(1).[2]

¶3     Police officers arrested Jose Carrillo for driving

under the influence and related offenses. He was taken to a DUI

van, where further action was delayed because Carrillo vomited

for about thirty minutes. While Carrillo was sitting on the

steps of the van, an officer placed a large toolbox on

---

[1]     Although the arrest in this case occurred in 2006, we cite the current version of the statute because intervening amendments are not material to the issues presented.

[2]     Under A.R.S. § 28-1321(D)(1), tests may also be given as provided in § 28-1388(E) (2004), which concerns samples of blood or other bodily substances taken for other purposes, such as when an individual receives medical care, and allows law enforcement officers to obtain and test a sample without consent or a search warrant. This "medical purposes exception" is not at issue here. Also not at issue is A.R.S. § 28-1321(C), which allows testing of persons who are dead, unconscious or otherwise incapable of refusing a test.

Carrillo's lap and another officer drew a blood sample. The officers did not obtain a warrant before administering the test.

¶4 Before his trial in Phoenix Municipal Court, Carrillo moved to suppress the results of his blood test. At an evidentiary hearing, Carrillo testified that he spoke only Spanish, the officers did not speak to him in Spanish, and he did not consent to the blood draw but did not resist it because he was afraid. The officers testified that although they were not certified Spanish translators, they communicated with Carrillo by gesturing and using basic Spanish. One officer said that they told Carrillo they were "going to take his blood" and he responded by holding out his arm. The officer also testified that he said the Spanish word for blood when indicating he was going to draw Carrillo's blood and Carrillo did not resist the test.

¶5 The municipal court denied the motion to suppress, stating that nothing in Carrillo's conduct indicated that he refused to consent to the test. Carrillo was convicted of DUI and other offenses. The superior court affirmed, rejecting Carrillo's argument that the blood draw violated A.R.S. § 28-1321.

¶6 The court of appeals accepted special action jurisdiction and granted relief. *Carrillo v. Houser*, 222 Ariz. 356, 214 P.3d 444 (App. 2009). The court held that A.R.S. § 28-

4

1321 does not allow a warrantless blood draw unless the suspect "expressly agrees" to the test, and the "'express agreement' required by the statute must be affirmatively and unequivocally manifested by words or conduct, and may not be inferred from a suspect's mere failure to communicate clear objection to the test." *Id.* at 357 ¶ 1, 214 P.3d at 445. The court vacated Carrillo's convictions and remanded to the municipal court to determine whether Carrillo had consented to the blood draw under the appropriate standard. *Id*. at 360 ¶ 14, 214 P.3d at 448. Dissenting, Judge Irvine agreed that the implied consent law generally does not authorize a blood draw without the person's consent or a warrant, but concluded that the record established that Carrillo had consented. *Id.* at 360-62 ¶¶ 15-22, 214 P.3d at 448-50.

¶7     The Phoenix City Prosecutor's Office petitioned for review, arguing that the court of appeals had misinterpreted the implied consent law. Recognizing the statewide importance of this issue, we granted review. We have jurisdiction under Article 6, Section 5(3) of Arizona's constitution and A.R.S. § 12-120.24 (2003).

## II.

¶8     The City Prosecutor argues that the court of appeals improperly "rewrote" A.R.S. § 28-1321 and ignored its two provisions that imply consent to testing by impaired motorists.

This result, the Prosecutor contends, not only is contrary to the statutory language, but also undermines the purpose of the implied consent statute and conflicts with prior decisions by this Court.  We consider these arguments in turn.

¶9        As the Prosecutor notes, A.R.S. § 28-1321(A) declares that a "person who operates a motor vehicle in this state gives consent" to a test "for the purpose of determining alcohol concentration or drug content" if he or she is arrested for "driving . . . under the influence of [alcohol] or drugs."  In turn, A.R.S. § 28-1321(C) provides that "[a] person who is dead, unconscious or otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the consent provided by subsection A . . . and the test or tests may be administered."  If a blood draw can be taken from an unconscious person without consent, the Prosecutor argues, no different result can obtain when the arrestee is simply silent.

¶10        These provisions of the implied consent law, however, cannot be interpreted in isolation from the rest of the statute. The "consent" by motorists referenced in subsection (A) does not always authorize warrantless testing of arrestees.  The legislature has explicitly provided otherwise in subsections (B) and (D).  Notwithstanding subsection (A), subsection (B) requires that the law enforcement officer "shall" request the arrestee to submit to a test and, if the arrestee "refuses," the

6

officer must explain that the arrestee's license will be suspended unless the arrestee "expressly agrees to submit to and successfully completes the test." *Id.* § 28-1321(B). Subsection (B) also specifies that "[a] failure to expressly agree to the test or successfully complete the test is deemed a refusal." *Id.* Subsection (D) then states that, "[i]f a person under arrest refuses to submit to the test," the test "shall not be given . . . [unless] pursuant to a search warrant." *Id.* § 28-1321(D)(1).

¶11 Giving force to the language of subsections (B) and (D) does not vitiate subsections (A) and (C). The implied consent noted in subsection (A) statutorily disclaims any asserted "right" by an arrestee to refuse testing. Subsection (B) allows arrestees to refuse consent (by not expressly agreeing) with the consequence of administrative license suspension. Subsection (D) then makes clear that the statute does not itself authorize warrantless testing upon an arrestee's refusal. Subsection (C), which concerns arrestees who are incapable of refusal, does not affect the provisions in subsections (B) or (D) regarding arrestees who can refuse.

¶12 The Prosecutor also suggests that the requirement in subsection (B) that an arrestee expressly agree to a test only applies to those initially refusing a test. This argument, however, implies that the word "refuses" in the first sentence

7

of subsection (B) means something different from "refusal" in the second sentence of that subsection and "refuses" in subsection (D). The more plausible interpretation is that the legislature intended the words to mean the same thing when used in different subsections of the same statute.

¶13 Interpreting the implied consent law generally to require that an arrestee expressly agree to warrantless testing also comports with the statutory purpose. The key purpose of the implied consent law "is to remove from Arizona highways those drivers who may be a menace to themselves and others because of intoxication." *Sherrill v. Dep't of Transp.*, 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990). One way the legislature chose to achieve this goal was by providing for the prompt suspension of the licenses of arrestees who refuse testing. Rather than statutorily authorizing the warrantless administration of tests on such persons, the legislature instead deemed a failure to expressly agree to be a refusal, thus expanding the class of arrestees subject to administrative sanctions. As this Court explained in *Sherrill*:

> The sanction of administrative license suspension for refusal to submit to the test was enacted to assure that licenses of dangerous drivers are revoked quickly, and to increase the certainty that a drunk driver receives a penalty even if that driver provided no evidence of intoxication. The "consent" aspect of the statute also assures that no physical violence or coercion will occur against a person who is noncooperative with a law officer's effort to obtain

8

necessary chemical evidence of intoxication.

*Id.* (internal citations omitted).

**¶14**       Our interpretation of the statute is confirmed by its history and our prior decisions. The legislature first enacted the implied consent law in 1969. 1969 Ariz. Sess. Laws, ch. 41, § 1 (1st Reg. Sess.). The statute then provided in subsection (A) that persons operating a motor vehicle "shall be deemed to have given consent" to testing if arrested for driving under the influence, directed in subsection (B) that officers shall warn an arrestee that his license will be suspended upon refusal to submit to the test, and further declared in subsection (D) that if a person "refuses" to submit to a test as provided in the statute, no test "shall be given." *Id.*

**¶15**       This statutory framework was not unique to Arizona. Many other states adopted "implied consent" statutes providing that arrestees who refuse testing would not be subject to warrantless testing but would have their licenses administratively suspended. *See* Tina W. Cafaro, *Fixing the Fatal Flaws in OUI Implied Consent Laws*, 34 J. Legis. 99, 103-04 (2008) (discussing history of implied consent laws); Phillip T. Bruns, *Driving While Intoxicated and the Right to Counsel: The Case Against Implied Consent*, 58 Tex. L. Rev. 935, 941-44 (1980) (same).

**¶16**       As originally enacted, Arizona's statute did not

define the word "refuses." This Court held in *Campbell v. Superior Court* that a refusal occurs when "the conduct of the arrested motorist is such that a reasonable person in the officer's position would be justified in believing that such motorist was capable of refusal and manifested an unwillingness to submit to the test." 106 Ariz. 542, 553, 479 P.2d 685, 696 (1971). This definition, however, generated litigation over whether an officer reasonably believed that a motorist had refused to submit. *See, e.g.*, *Willis v. State*, 145 Ariz. 302, 304-05, 701 P.2d 10, 12-13 (App. 1985). In 1987, the legislature amended the implied consent law and adopted the language that now appears in A.R.S. § 28-1321(B) providing that "[a] failure to expressly agree to the test or successfully complete the test is deemed a refusal." 1987 Ariz. Sess. Laws, ch. 262, § 2 (1st Reg. Sess.).

¶17    In addition to clarifying the meaning of refusal, the legislature also amended the implied consent law to specify circumstances in which tests may be administered even if the arrestee refuses to submit. In 1984, the legislature added a provision to subsection (D) allowing tests pursuant to the so-called "medical purposes exception." *See* 1984 Ariz. Sess. Laws, ch. 257, §§ 1-2 (2d Reg. Sess.), now codified in A.R.S. § 28-1388(E) (2004); *see also State v. Cocio*, 147 Ariz. 277, 285-87, 709 P.2d 1336, 1344-46 (1985) (interpreting this provision).

10

This Court subsequently held that the statute did not authorize the administration of tests "solely as a result of a search warrant" after an arrestee had refused to submit to the test. *Collins v. Superior Court*, 158 Ariz. 145, 146, 761 P. 2d 1049, 1050 (1988). In response, the legislature again amended subsection (D), adding language providing that tests may also be administered "pursuant to a search warrant" if a person refuses to submit. *See* 1990 Ariz. Sess. Laws, ch. 375, § 7 (2d Reg. Sess.).

¶18 Neither the implied consent law nor decisions by this Court have ever suggested that the "consent" referenced in subsection (A) authorizes warrantless testing of all persons arrested for driving under the influence. Instead, the statute has always provided that an arrestee may refuse to submit to tests but that doing so will result in the loss of the arrestee's license. Over time, the legislature has clarified that an arrestee's failure to expressly agree constitutes a refusal, and that if the arrestee refuses, tests may not be administered except under the medical purposes exception identified in A.R.S. § 28-1388(E) or a search warrant.

¶19 The statute requires that an arrestee "expressly agree" to warrantless testing. "Expressly," as we have noted in another context, means "in direct or unmistakable terms" and not merely implied or left to inference. *In re Estelle's Estate*,

11

122 Ariz. 109, 113, 593 P.2d 663, 667 (1979). Failing to actively resist or vocally object to a test does not itself constitute express agreement. Instead, to satisfy the statutory requirement, the arrestee must unequivocally manifest assent to the testing by words or conduct.

¶20    Whether Carrillo expressly agreed to the blood draw is not before us. The court of appeals unanimously concluded that A.R.S. § 28-1321 requires Carrillo's actual consent to the testing. *Carillo*, 222 Ariz. at 357 ¶ 1, 214 P.3d at 445. The majority held that a remand is necessary so the municipal court may determine, under the correct legal standard, whether Carrillo agreed to the blood draw; one judge dissented in part because he thought the record sufficiently establishes Carrillo's consent. *Id*. at 360 ¶¶ 14, 18, 214 P.3d at 448. The Prosecutor did not seek review of the remand order, but instead asked this Court to review only whether the court of appeals had correctly interpreted the implied consent law to require express agreement.

¶21    Other limits of our decision also merit comment. Our holding reflects the requirements of A.R.S. § 28-1321; because we resolve this case as a matter of statutory interpretation, we need not address any constitutional issues raised by Carrillo. *Cf. South Dakota v. Neville,* 459 U.S. 553, 559 (1983) (stating that under *Schmerber v. California*, 384 U.S. 757 (1966), a state

may "force a person suspected of driving while intoxicated to submit to a blood alcohol test") (footnote omitted); *Campbell*, 106 Ariz. at 554, 479 P.2d at 697 (rejecting Fourth Amendment challenge to implied consent law as meritless in light of *Schmerber*).  We also do not consider here circumstances in which subsection (C) of the implied consent law or other statutes, such as A.R.S. § 28-673(F) (Supp. 2009), may allow warrantless testing of persons incapable of refusing a test.

### III.

**¶22**     For the foregoing reasons, we vacate the opinion of the court of appeals and remand this case to the municipal court to determine whether Carrillo expressly agreed to the blood draw in accordance with the implied consent law.


_____
                                    W. Scott Bales, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice

_____
A. John Pelander, Justice