concurring.
¶ 24 As a matter of statutory interpretation, we previously held that, absent a search warrant, Arizona’s “implied consent” statute, A.R.S. § 28-1321, requires an arrestee’s express consent to a chemical test. Carrillo v. Houser, 224 Ariz. 463, 463 ¶ 1, 232 P.3d 1245, 1245 (2010). The Court now holds that the Fourth Amendment also applies to a blood draw administered under the statute and thus an arrestee’s consent must be voluntary. Supra ¶ 18. I have no quarrel with that holding, but reluctantly concur only because the parties acknowledge, and our case law indicates, that voluntariness determinations are reviewed for abuse of discretion. Under that standard of appellate review, I cannot say that the juvenile court erred in finding Tyler’s consent involuntary when some evidence arguably supports an inference to that effect. Cf. State v. Chapple, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983) (A court abuses its discretion when “the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice.”).
¶25 As the majority notes, voluntariness issues often are fact-intensive and are assessed from the totality of the circumstances. Supra ¶ 13 (citing Schneckloth v. Busta-monte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The majority correctly observes that we generally review rulings on motions to suppress evidence for an abuse of discretion, supra ¶¶ 8, 19, and finds no such abuse in the trial court’s ruling, supra ¶ 21. I write separately to express concern with indiscriminately applying those principles and to suggest, for future purposes only, that abuse-of-discretion review might not be appropriate in cases such as this.
¶ 26 Only the deputy sheriff and Tyler’s father testified at the suppression hearing in this ease. Significantly, the pertinent facts are undisputed and the juvenile court’s ruling is not based on witness credibility, weighing of conflicting evidence, or discretionary de *90 terminations. Accordingly, the court’s ultimate ruling on voluntariness could, and arguably should, be deemed a mixed question of fact and law subject to our de novo review. That approach, although admittedly conflicting with extant Arizona case law, would be consistent with our approach in other criminal-case contexts involving constitutional issues. See State v. Moore, 222 Ariz. 1, 7 ¶ 17, 213 P.3d 150, 156 (2009) (noting that, although we review trial court rulings on pretrial identifications for abuse of discretion and defer to factual findings supported by the record, the ultimate question of constitutionality is “a mixed question of law and fact” subject to our de novo review); State v. Gonzalez-Gutierrez, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996) (applying same principles to question of whether sufficient legal basis existed for vehicular stop); State v. Blackmore, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996) (same regarding question of whether an arrest was illegal); State v. Rogers, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996) (same regarding question of whether there was reasonable suspicion for an investigatory stop of a pedestrian).
¶ 27 Recently, the Vermont Supreme Court thoroughly expounded on the appropriate standard of appellate review for voluntariness-of-eonsent issues. State v. Weisler, 190 Vt. 344, 35 A.3d 970 (2011). An appellate court, of course, appropriately defers “to the trial court’s underlying findings of historical fact” as a “fundamental principle of appellate review.” Id. at 976, 985; see also Chapple, 135 Ariz. at 297 n. 18, 660 P.2d at 1224 n. 18. But as the Vermont court observed, Schneckloth did not address the subject of appellate review, and “[sjimply labeling consent to search as a question of fact to be determined from the totality of the circumstances” at the trial court level “does little to advance the standard-of-review analysis.” Weisler, 35 A3d at 977. Noting that “appellate courts have traditionally reviewed and resolved independently the question of voluntariness in order to ‘guide police, unify precedent, and stabilize the law,’ ” id. at 985 (quoting Thompson v. Keohane, 516 U.S. 99, 115, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)), the Weisler court held that “a trial court’s decision on the question of the voluntariness of a consent to search, and thus the ultimate constitutional validity of the search, must be reviewed independently ... on appeal,” id. at 983.
¶ 28 Vermont is not alone. Other courts also follow this approach. See, e.g., United States v. Lewis, 921 F.2d 1294, 1301 (D.C.Cir. 1990) (conducting de novo review of a trial court’s finding of involuntary consent when facts were uncontested and government presented uneontroverted evidence on that issue); United States v. Garcia, 890 F.2d 355, 359-60 (11th Cir.1989) (same); State v. $217,590.00 in U.S. Currency, 18 S.W.3d 631, 633 (Tex.2000) (assessing whether the trial court’s factual findings demonstrate voluntariness under the totality of the circumstances is a question of law); State v. Hansen, 63 P.3d 650, 663 (Utah 2002) (“While consent is a factual finding, voluntariness is a legal conclusion, which is reviewed for correctness.”); State v. Phillips, 218 Wis.2d 180, 577 N.W.2d 794, 800 (1998) (rejecting proposition that the standard of appellate review “turn[s] on whether the underlying determination of the [trial] court was fact-specific”); see also Weisler, 35 A.3d at 976, 980 (collecting eases).
¶ 29 The analyses of those courts would support de novo review of rulings on whether an arrestee’s consent to search was voluntary or involuntary, at least when, as here, the underlying facts are undisputed and the trial court’s ruling is not based on conflicting evidence or credibility determinations. This Court has not yet engaged in the type of nuaneed explication found in eases such as Weisler on the appropriate standard of appellate review for Fourth Amendment volun-tariness rulings. This, however, is not the ease in which we should do so. The parties have not raised or argued any issues relating to the standard of review, but rather concede that abuse-of-discretion review applies. Accordingly, the Court appropriately applies that standard in deciding this particular case.
¶ 30 Stating that voluntariness determinations are fact-intensive inquiries, based on the totality of circumstances, and subject to abuse-of-discretion review, however, does not directly answer the ultimate question: What is the test or standard for establishing valid, *91 voluntary consent to a warrantless search under the Fourth Amendment? Generally, to be voluntary, “[c]onsent must ‘not be coerced, by explicit or implicit means, by implied threat or covert force.’” State v. Guillen, 223 Ariz. 314, 317 ¶ 11, 223 P.3d 658, 661 (2010) (quoting Schneckloth, 412 U.S. at 228, 93 S.Ct. 2041). “Consent to search is voluntary if it is ‘the product of an essentially free and unconstrained choice by its maker,’ and not the result of circumstances which overbear the consenting party’s will and critically impair his or her capacity for self-determination.” People v. Magallanes-Ara-gon, 948 P.2d 528, 530 (Colo. 1997) (quoting Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041). Stated differently, “before a court may conclude that consent was voluntarily given, it must find no objective evidence of coercion, duress, deception, promises, threats, intrusive conduct or other undue influence by the police, which critically impaired the defendant’s judgment.” Id. at 531; see also id. at 533 (“The essential consideration in determining voluntariness of a consent to search is the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant.”).
¶ 31 Applying those standards, only with some difficulty do I agree with the majority that the juvenile court did not abuse its discretion in finding Tyler’s consent was involuntary. Cf. Chapple, 135 Ariz. at 297 n. 18, 660 P.2d at 1224 n. 18 (When trial court determinations hinge not on “conflicting procedural, factual or equitable considerations,” but rather are made on undisputed facts, “resolution of the question is one of law or logic,” obligating us “to ‘look over the shoulder’ of the trial judge and, if appropriate, substitute our judgment for his or hers.”). But based on the uncontroverted facts in this ease, were de novo review applicable here, I would readily conclude that the State met its burden of proving by a preponderance of the evidence that Tyler’s consent to the warrant-less blood draw was voluntary and, therefore, complied with the Fourth Amendment. See Ariz. R.Crim. P. 16.2(b) (prescribing burden and standard of proof on whether evidence was lawfully obtained).
¶ 32 The majority appropriately recites certain facts to support the conclusion that the juvenile court did not abuse its discretion in finding Tyler’s consent involuntary. Supra ¶¶ 2-4, 20. The totality of the circumstances, however, includes other undisputed facts indicating that Tyler’s verbal and written consent to the blood draw was indeed voluntary and not obtained by any “overbearing, coercive, or deceptive police conduct.” Magallanes-Aragon, 948 P.2d at 533. Without belaboring all those facts, suffice it to say that had the juvenile court found Tyler’s consent voluntary, I would have had no difficulty affirming that ruling, and I doubt my colleagues would have either. But, as noted above, I cannot conclude under an abuse-of-discretion standard of review that the juvenile court erred and, therefore, join in the Court’s opinion.
¶ 33 In addition, In re Andre M., on which the juvenile court relied, is materially distinguishable. Unlike this case, In re Andre M. involved issues of voluntariness under the Fifth Amendment’s self-incrimination clause and was heavily influenced by “the absence of a parent who attempted to attend the [minor’s] interrogation but was prevented from doing so by the police officers.” 207 Ariz. 482, 485 ¶ 12, 88 P.3d 552, 555 (2004). Here, Tyler and his father (who had been contacted by the school, came there, and waited in the lobby) never asked to see or speak with each other, and the deputy was not informed until after the blood draw that a parent was present at the school. Once he learned of that, the deputy spoke with the parents, who understood the reasons for Tyler’s arrest and had no questions.
¶ 34 It is also clear from its ruling that the juvenile court deemed very significant the alleged violation of the Parents’ Bill of Rights, AR.S. § 1-602. The majority, however, correctly rejects that as an appropriate basis for ordering suppression. Supra ¶ 22.
¶ 35 Finally, I understand that Fourth Amendment issues usually, and necessarily, entail “case-by-case,” “fact-intensive, totality of the circumstances analyses.” Missouri v. McNeely, — U.S.-, 133 S.Ct. 1552, 1564, 185 L.Ed.2d 696 (2013). But a core objective of our criminal-case jurisprudence should be *92 “to ‘guide future decisions’ as well as to ‘guide police, unify precedent, and stabilize the law.’ ” Weisler, 35 A3d at 979 (quoting Thompson, 516 U.S. at 114-15, 116 S.Ct. 457). In that regard, I have concerns similar to those recently expressed by Chief Justice Roberts in McNeely: “A police officer reading this Court’s opinion would have no idea— no idea — what the Fourth Amendment requires of him, once he decides to obtain a blood sample from,” in this ease, a juvenile DUI arrestee to ensure that the juvenile’s consent to a blood draw is voluntary. 133 S.Ct. at 1569 (Roberts, C.J., concurring in part and dissenting in part). The majority here says that “[i]f the arrestee is a juvenile, the youth’s age and a parent’s presence are relevant, though not necessarily determinative, factors that courts should consider in assessing whether consent was voluntary under the totality of the circumstances.” Supra ¶ 18. The Court also refers generally to juveniles’ relative immaturity, and specifically to Tyler’s interactions with the deputy and his fluctuating emotional states during the arrest. Supra ¶¶ 14,20.
¶36 But faced with the not uncommon scenario presented in this ease, a reasonable officer, before drawing blood pursuant to the juvenile’s ostensibly valid consent, surely will now wonder whether he or she must first take steps to have a parent notified and present, and inquire about the juvenile’s maturity, general comprehension levels, and emotional status, lest the juvenile’s consent later be deemed involuntary. Those individualized, unpredictable variables afford little guidance and certainty to law enforcement officers, school administrators, parents, minor drivers, or juvenile courts. Nor does such unpredictability advance the overarching purpose of the implied consent law — “to remove from the highways of this state drivers[, including juvenile motorists,] who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor” or drugs. Campbell v. Superior Court, 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971); see also Carrillo, 224 Ariz. at 465 ¶ 13, 232 P.3d at 1247; cf. State v. Randy J., 150 N.M. 683, 265 P.3d 734, 742 (N.M.Ct.App.2011) (holding that state’s implied consent law applies to any person, including juveniles, who drives a vehicle in the state).
¶37 Possibly compounding the problem, our opinion today might well engender dubious involuntariness claims and related suppression hearings aimed at excluding evidence derived from chemical testing of impaired drivers whose express consent was ostensibly voluntary and valid under Arizona’s implied consent law. Such challenges can be made by defendants who, because they submitted to testing, retain their driving privileges in the interim. Audio or video recording of a suspect’s consent might be a solution. But in view of the various contingencies and uncertainties surrounding determinations by officers in the field (and subsequently by courts) on whether express consent of DUI arrestees (particularly juveniles) is voluntary, the safest course of action for law enforcement might simply be to obtain search warrants, when reasonably feasible, for obtaining blood samples in DUI investigations. See A.R.S. §§ 13-3914, - 3915, 28-1321(D)(l). That default approach, although arguably diluting the effectiveness of the implied consent law, and not constitutionally required under McNeely (which neither involved nor discounted consent as a valid exception to the Fourth Amendment’s warrant requirement), would certainly comport with the Fourth Amendment and alleviate many potential, foreseeable problems in this area.