BALES, C.J.,
concurring in part and dissenting in part.
¶ 37 I agree that Valenzuela did not voluntarily consent to the warrantless search, and I therefore specially concur in parts I, II.A, and II.B of the majority opinion. In two respects, however, I disagree with the majority’s analysis. First, I would hold that a person cannot, as a matter of law, be deemed to have voluntarily consented by acquiescing when police assert a search is lawfully authorized (or, as the police stated here, “required” by law). Second, I would not address, in the first instance, the application of the good-faith exception to the exclusionary rule, but if I had to reach the merits, I would hold that the exception does not apply. Accordingly, I respectfully dissent from parts II.C and III.
I.
¶ 38 Consistent with Schneckloth, the majority recognizes that the voluntariness of consent to a search is determined by the “totality of the circumstances.” Supra ¶ 11. In most eases, this inquiry is a factual determination that considers various aspects of the setting in which a search occurs, the conduct of law enforcement officers, and the characteristics of the person who submits to the search. See Schneckloth, 412 U.S. at 226-27, 229, 93 S.Ct. 2041; Butler, 232 Ariz. at 87-88, ¶¶ 13, 20, 302 P.3d at 612-13.
¶ 39 “Where there is coercion there cannot be consent.” Bumper, 391 U.S. at 550, 88 S.Ct. 1788. Bumper and earlier Supreme Court decisions recognize that an assertion of lawful authority is inherently (although perhaps lawfully) coercive. Thus, if submission to a search is immediately preceded by such an assertion, consent cannot be deemed voluntary. See id. More colloquially, these cases stand for the principle that people do not “voluntarily” consent to searches when they do what the police say the law requires them to do. This “lawful authority principle” is not displaced by Schneckloth.
¶ 40 The lawful authority principle is clearly illustrated by Bumper, where the Court held that a homeowner’s consent was involuntary solely because it was immediately preceded by an officer’s assertion that he had a warrant. Id. at 548-49, 88 S.Ct. 1788. Bumper gave no weight to other circumstances of the search. The homeowner was never placed in custody or threatened; she told the officers to “go ahead and look all over the house.” Id. at 556, 88 S.Ct. 1788 (Black, J., dissenting). She testified that she “had no objection to [the police] making a search,” she allowed the search “entirely under her own free will,” and she was not forced “at all.” Id.
¶ 41 Despite the circumstances suggesting the homeowner was not pressured to submit, the Court in Bumper treated as dispositive *311 the fact that the search was immediately preceded by an assertion of lawful authority by the police. Because such an assertion is inherently coercive, id. at 550, 88 S.Ct. 1788, any succeeding “consent” cannot be “freely and voluntarily given.” Id. at 548-49, 88 S.Ct. 1788. The Court effectively held that consent, in these circumstances, cannot, as a matter of law, be deemed voluntary.
¶ 42 Bumper comports with prior Supreme Court decisions. In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the police, having traced the smell of burning opium to a hotel room, gained entry by knocking on the door, identifying themselves, and telling the occupant that they “want[ed] to talk to [her] a little bit.” Id. at 12, 68 S.Ct. 367. The occupant stepped back “acquiescently” and admitted the officers. Id. Rejecting any suggestion that the occupant had consented to the entry, the Court observed that it “was demanded under color of office” and “granted in submission to authority.” Id. at 13, 68 S.Ct. 367. In ruling the entry was nonconsensual, the Court did not consider other circumstances of the search.
¶ 43 Johnson in turn cited Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), where officers went to a home seeking evidence of illegally distilled whiskey. Id. at 315, 41 S.Ct. 266. The officers gained entry by telling the suspect’s wife that they were “revenue officers that had come to search the premises ‘for violations of the revenue law.’ ” Id. Without otherwise assessing the circumstances, the Court noted that any contention that the search had been consensual “cannot be entertained,” because the officers had demanded admission “to make a search ... under government authority.” Id. at 317, 41 S.Ct. 266. Foreshadowing Bumper, the Court noted that “it is perfectly clear’ that under the implied coercion here presented,” the wife could not voluntarily consent to the search (which the Court phrased as waiving the husband’s constitutional rights). Id.
¶ 44 We should read Schneckloth as preserving the lawful authority principle. Most significantly, the principle respects Fourth Amendment values by recognizing that we expect people to comply with police assertions of lawful authority and that acquiescence in such assertions should not be viewed as “freely and voluntarily” given consent.
¶ 45 Schneckloth, moreover, quoted Bumper ’s reasoning approvingly and otherwise indicates the Court did not intend to displace its earlier case law. Citing Bumper, Johnson, and Amos, the Court noted “if under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable.” 412 U.S. at 233-34, 93 S.Ct. 2041. This statement should not be read as modifying the Court’s prior decisions, but instead as recognizing that the lawful authority principle complements the “totality of the circumstances” test. Immediately after making this statement, Schneckloth explained that the Court had not found valid consent in Bumper, noting that “(w)hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit eolorably lawful coercion. Where there is coercion there cannot be consent.” Id. at 234, 93 S.Ct. 2041 (quoting Bumper, 391 U.S. at 550, 88 S.Ct. 1788).
¶ 46 Schneckloth did not itself involve an assertion of lawful authority to conduct a search, but instead whether the prosecution must show that a person knew he or she had a right to refuse in order to establish that consent was voluntarily given. 412 U.S. at 223-24, 93 S.Ct. 2041. In holding that such knowledge is not a prerequisite, Schneckloth noted that this factor was not considered in Bumper, Johnson, or Amos. Id. at 234, 93 S.Ct. 2041. But recognizing that these decisions did not require the prosecution to show a person subjectively knew they could refuse to submit, or that voluntariness depends on the “totality of the circumstances,” is not inconsistent with the lawful authority principle. See id. at 243 n. 31, 93 S.Ct. 2041 (noting that Johnson and Amos turned on objective circumstances of search rather than absence of knowledge of right to refuse).
*312 ¶ 47 Indeed, Schneckloth itself noted “Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or eoei’cion, express or implied.” 412 U.S. at 248, 93 S.Ct. 2041. Although “[v]oluntariness is a question of fact to be determined from all the circumstances,” id. at 248-49, 93 S.Ct. 2041, the Court in Schneckloth also restated its earlier observation in Bumper that assertions of lawful authority are inherently coercive. The best way to reconcile the Supreme Court’s statements is to recognize that consent to a search cannot, as a matter of law, be deemed voluntary when it is immediately preceded by an assertion of lawful authority.
¶ 48 In rejecting this proposition, the majority identifies two hypotheticals. Supra ¶ 18. The first is when an officer retracts an assertion of lawful authority before a person accedes to a search. This hypothetical does not argue against the lawful authority principle. The principle rests on the inherent coereiveness of the assertion of lawful authority; it does not apply when the assertion is withdrawn before a person assents to a search.
¶ 49 The second hypothetical—where an officer’s assertion of authority is contradicted by a private third-party before the person submits to a search—also does not support rejecting the lawful authority principle. One might conclude that the inherently coercive nature of the officer’s assertion cannot be dispelled by unofficial, third-party statements. To hold otherwise would require finding that a person can completely ignore the officer’s claimed authority and “freely” submit after a third party tells them they need not do so. None of the cases cited by the majority, supra ¶ 18, involve a third party contradicting an officer’s assertion of authority. Nor need we address that issue here: the officer’s assertion immediately preceded Valenzuela’s assent to the search.
¶ 50 The majority also implicitly recognizes that the Schneckloth “totality test” must apply differently when, as is true here, an officer has asserted lawful authority to conduct a search. The majority—like the Supreme Court in Bumper and Johnson—does not find significant various circumstances that generally apply under a “totality” test, but instead gives dispositive weight to the officer’s repeated assertions of lawful authority. Compare ¶ ¶ 22-23 (concluding that Valenzuela’s “consent,” like the grandmother’s consent in Bumper, was involuntary because nothing dispelled the coercive nature of the assertion of authority) with Valenzuela, 237 Ariz. at 315 ¶¶ 30-31, 350 P.3d at 819 (noting that various factors, including suspect’s demeanor, emotional state, education, and intelligence, should be considered); cf. Schneckloth, 412 U.S. at 227, 249, 93 S.Ct. 2041 (noting that suspect’s knowledge of right to refuse generally is a factor to be considered).
¶ 51 A better path to the majority’s conclusion would be holding that consent cannot, as a matter of law, be deemed voluntary when it is immediately preceded by a claim of lawful authority. Reaffirming this lawful authority principle would remain faithful to Supreme Court precedent while protecting Fourth Amendment values and providing clearer guidance for the public, law enforcement, and our courts.
II.
¶ 52 The majority, recognizing that Valenzuela’s consent was involuntary, goes on to hold that the evidence obtained from the unlawful search is admissible under the good-faith exception to the exclusionary rule. ¶¶ 30-32. The good-faith exception was not addressed by the trial court or the court of appeals.
¶ 53 Application of the good-faith exception can involve complicated considerations of the social costs and deterrent benefits from excluding the evidence at issue. See, e.g., Herring v. United States, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (discussing whether to apply the good-faith exception to the exclusionary rule requires analyzing the benefits of deterrence against the social costs of excluding evidence in any particular case). The parties did not discuss the exception in *313 their briefs—indeed, the State merely afforded the exception a passing mention in a footnote. Given the lack of briefing, I would decline to address the good-faith exception and instead remand to the trial court to consider, in the first instance, whether the issue has been preserved and, if so, how it should be resolved.
¶ 54 On the merits, I disagree with the majority’s analysis. Davis states that when law enforcement officers “act with an objectively reasonable good-faith belief that their conduct is lawful,” deterrence is unnecessary and the exclusionary rule does not apply. 131 S.Ct. at 2427-28. But the rule serves an important deterrence purpose when there is either deliberate, reckless, or grossly negligent conduct or “recurring or systemic negligence.” Davis, 131 S.Ct. at 2428 (citing Herring, 555 U.S. at 144, 129 S.Ct. 695).
¶ 55 In this case, the officer’s use of an MVD admin per se form inaccurately telling people that they are required to submit to tests reflects at least “recurring or systemic negligence.” Id. In applying the good-faith exception to the exclusionary rule, courts expect that “[rjesponsible law-enforcement officers will take care to learn what is required of them” under binding precedent and “conform their conduct to these rules.” Id. at 2429 (internal quotation marks and citations omitted).
¶ 56 More than five years ago, in Carrillo v. Houser, 224 Ariz. 463, 232 P.3d 1245 (2010), this Court considered whether Arizona’s implied consent statute, AR.S. § 28-1321—the same statute at issue today—authorizes law enforcement officers to administer warrantless tests without a person’s express consent. 224 Ariz. at 463 ¶ 1, 232 P.3d at 1245. Recognizing that the underlying statutes allow people to refuse to submit to testing, id. at 465 ¶ 11, 232 P.3d at 1247, we held that an officer must obtain a warrant or express consent in order to administer a test. Id. at 466 ¶¶ 18, 19, 232 P.3d at 1248.
¶ 57 Carrillo establishes that police officers were misstating the law when they admonished arrestees, based on the MVD form, that they are required to submit to tests. The misstatement does not occur just once. The form states that “Arizona law requires you to submit” to a warrantless test, and repeats that “requirement” under Arizona law no fewer than three more times. To underscore the point, the form concludes by stating “You are, therefore, required to submit to the specified tests.” Carrillo was decided in 2010. Insofar as law enforcement officers have continued to coercively admonish DUI suspects that “Arizona law requires” submission to warrantless tests, they have ignored this Court’s binding precedent.
¶ 58 Given Carrillo, I cannot accept the majority’s conclusions that “binding precedent” sanctioned the admonition given to Valenzuela and “the good-faith exception therefore applies.” Supra ¶ 33. As a decision by this Court, Carrillo is the binding authority regarding the meaning of the implied consent statute, and its legal force does not depend on our expressly singling out inconsistent lower court decisions or administrative practices. The majority’s reliance on State v. Brito, 183 Ariz. 535, 539, 905 P.2d 544, 548 (App.1995), is particularly misplaced, given that Carrillo expressly rejects Brito’s assertion that Arizona’s implied consent statute requires suspects to submit to testing. Cf. Carrillo, 224 Ariz. at 466 ¶ 18, 232 P.3d at 1248 (noting that “the statute has always provided that an arrestee may refuse to submit to tests but that doing so will result in the loss of the arrestee’s license”). At the least, after Carrillo the admonition was of dubious legality, and Davis should not apply.
¶ 59 Extending Davis to apply the good-faith exception when the law is unsettled incentivizes, rather than deters, unconstitutional behavior. See Davis, 131 S.Ct. at 2435 (Sotomayor, J., concurring). “Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice” would not be excluded. Id. (internal quotation marks and citations omitted). Cf. Emily Ward, Note, From Pen to Patrol: How Arizona Law Enforcement Applied Carrillo v. Houser, 53 Ariz. L. Rev. 345 (2011) (discussing initial responses by law enforcement to Carrillo).
*314 ¶ 60 Here, the police incorrectly told drivers that they were lawfully required to submit to tests, even though our 2010 decision in Carrillo recognized that “the statute has always provided that any arrestee may refuse to submit.” 224 Ariz. at 466 ¶ 18, 232 P.3d at 1248. Applying the good-faith exception here effectively rewards the systemic failure to revise the MVD admonition to accurately state the law. That result conflicts with the reasoning of Davis and the goals of the exclusionary rule. Thus, I respectfully dissent from parts II.C and III of the majority opinion.