ECKERSTROM, Chief Judge:
¶ 1 In this special action, Alexis Diaz challenges the ruling of the respondent judge reversing the Tucson City Court's order granting her motion to suppress breath evidence obtained after Diaz was arrested for driving under the influence (DUI). Because we conclude the officer complied with the statutory requirements for obtaining a breath test, the respondent judge correctly reversed the city court's ruling, albeit for reasons other than those set forth below. We therefore deny relief.
¶ 2 Diaz was arrested for and subsequently charged with DUI. See A.R.S. § 28-1381. After her arrest, the investigating officer read her the following admonition:
Arizona law states that a person who operates a motor vehicle at any time in *952 this state gives consent to a test or tests of blood, breath, urine or other bodily substances for the purpose of determining alcohol concentration or drug content. The law enforcement officer is authorized to request more than one test and may choose the types of tests.
If the test results are not available, or indicate an alcohol concentration of 0.08 or above ... then your Arizona driving privilege will be suspended for not less than 90 consecutive days.
If you refuse, or do not expressly agree to submit to, or do not successfully complete the tests, your Arizona driving privilege will be suspended. The suspension will be requested for 12 months, or for two years if you've had a prior implied-consent refusal within the last 84 months.
Will you submit to the tests?
Diaz agreed and submitted to testing.
¶ 3 Diaz filed a motion to suppress the testing results, arguing her consent had not been voluntary under the Fourth Amendment and that "the implied consent rules ... do not excuse the State from demonstrating that consent was voluntarily obtained." In response, the state argued that "the search incident to arrest exception" to the Fourth Amendment warrant requirement "applies to breath tests conducted after a lawful DUI arrest," so voluntary consent was not constitutionally required. It asserted that the admonition given to Diaz was different from that deemed coercive in State v. Valenzuela , 239 Ariz. 299, 371 P.3d 627 (2016), and was not coercive. And, relying on Valenzuela , the state contended that even if the admonition had been coercive, the officer had acted in good faith. The city court asked for supplemental memoranda on the exclusionary rule and good faith and thereafter granted the motion to suppress, concluding that the admonition read to Diaz rendered any "consent given ... coerced and therefore not voluntary" and that the state had not established the officer had acted in good faith.
¶ 4 The state appealed the city court's ruling to the superior court pursuant to A.R.S. §§ 12-124(A), 13-4032(6). The parties again addressed the questions of voluntariness, exclusion, and good faith presented to the city court. The respondent judge determined the city court had properly ruled Diaz's consent was involuntary, but disagreed as to the application of the good-faith exception, concluding that based on Valenzuela , the exception applied. The respondent therefore reversed the city court's ruling on the motion to suppress and remanded the matter to that court. Diaz then filed the instant petition for special action in this court.
¶ 5 Exercise of our special-action jurisdiction is appropriate when a party lacks "an equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Action 1(a). And it is particularly so when, as here, the issues are ones "of statewide importance, issues of first impression, ... or issues that are likely to arise again." State ex rel. Romley v. Martin , 203 Ariz. 46, ¶ 4, 49 P.3d 1142 (App. 2002), aff'd, 205 Ariz. 279, 69 P.3d 1000 (2003). We therefore accept jurisdiction.
¶ 6 On special action, the parties advance the same arguments made below. This court, following the United States Supreme Court, has determined the Fourth Amendment does not require suppression of breath-test results because, "as Birchfield [v. North Dakota ] held, a warrantless breath test is allowed as a search incident to a lawful [DUI] arrest." State v. Navarro , 241 Ariz. 19, ¶ 4, 382 P.3d 1234 (App. 2016), citing Birchfield v. North Dakota , ---U.S. ----, 136 S.Ct. 2160, 2184, 195 L.Ed.2d 560 (2016). Diaz was administered the warrantless test after her arrest for DUI, the lawfulness of which she does not contest, and the test results were therefore admissible under the Fourth Amendment regardless of whether her consent was voluntary. See Birchfield , --- U.S. ----, 136 S.Ct. at 2184 ; Navarro , 241 Ariz. 19, ¶ 4, 382 P.3d 1234.
¶ 7 Furthermore, in light of Birchfield 's broad holding, questions concerning the voluntariness of Diaz's consent to the test are settled from a Fourth Amendment perspective, because the test results squarely fall under the separate search-incident-to-arrest exception. See Navarro , 241 Ariz. 19, ¶¶ 6-7, 382 P.3d 1234 ; cf. Arizona v. Gant , 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (warrantless search per se unreasonable *953 under Fourth Amendment unless one of few well-established exceptions applies, including a search incident to a lawful arrest). Therefore, the Fourth Amendment did not require proof of voluntariness.
¶ 8 Nor does article II, § 8 of the Arizona Constitution provide Diaz any greater protection from warrantless breath tests. We recently addressed an identical argument and observed that our supreme court has "long recognized that a search incident to a lawful arrest does not require any warrant and that non-invasive breath tests for DUI arrestees fall within this exception." Navarro , 241 Ariz. 19, ¶¶ 4-5, 382 P.3d 1234 (citations omitted). We concluded that "[t]hese precedents foreclose the argument that article II, § 8 of the Arizona Constitution provides greater privacy protection than the federal constitution with regard to DUI breath testing." Id. ¶ 5.
¶ 9 The question that remains, however, is the one left open in Navarro -whether suppression is required under Arizona's implied consent statute, A.R.S. § 28-1321. Navarro , 241 Ariz. 19, n.3, 382 P.3d 1234, n.3. In her motion to suppress, Diaz asserted the admonition as given "d[id] not accurately reflect the language contained in A.R.S. § 28-1321" and argued "Arizona proscribes a warrantless breath test in the absence of voluntary consent."
¶ 10 The implied consent statute provides,
A. A person who operates a motor vehicle in this state gives consent ... to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed in violation of this chapter or § 4-244, paragraph 34 while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle in this state ...
... [w]hile under the influence of intoxicating liquor or drugs.
....
B. After an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed ... and if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended ... unless the violator expressly agrees to submit to and successfully completes the test or tests. A failure to expressly agree to the test or successfully complete the test is deemed a refusal....
The statute further provides that "[i]f a person under arrest refuses to submit to a test," the test may not be given, except with a search warrant or pursuant to A.R.S. § 28-1388(E), and the violator's license must be surrendered. § 28-1321(A), (B), (D).
¶ 11 As quoted above, the admonition the officer provided Diaz reflected this statutory language. However, it prefaced the statutory language with the phrase "Arizona law states." It did not advise Diaz of any legal right to refuse. Diaz contended in her motion to suppress that eliminating the word "require," but using this phrase in its place, communicated "that the arrestee is compelled by lawful authority to submit to a search." Therefore, she argues, the new admonition remained coercive. And, she argued, citing § 28-1321 and A.R.S. § 28-1388, that "Arizona law prohibits a warrantless breath test in the absence of voluntary consent."
¶ 12 Nothing in § 28-1388 requires that a violator must provide voluntary consent for breath testing before the state may administer the test. However, § 28-1321, as quoted above, requires that a violator "expressly agree[ ]" to testing before a warrantless test may be administered. If a violator does not "expressly agree to the test or successfully complete the test" he or she is deemed to have refused. § 28-1321(B). Our courts have generally construed this statutory scheme as providing drivers with the power, but not the legal right, to refuse testing. See, e.g. , Campbell v. Superior Court , 106 Ariz. 542, 549, 479 P.2d 685, 692 (1971). If a violator refuses, he or she will then be subject *954 to the statutory penalties. Indeed, our supreme court in Valenzuela acknowledged the scheme's validity for such purposes. 239 Ariz. 299, ¶ 25, 371 P.3d 627.
¶ 13 The question before us then is whether the violator's agreement must be voluntary to comply with state law. In addressing a former analogous version of our DUI statutes, this court concluded that "implicit in ... these statutes is a voluntary, i.e., intelligent or knowing, refusal." State v. Superior Court (Hays ) , 155 Ariz. 403, 407, 747 P.2d 564, 570 (App. 1986) (discussing former A.R.S. §§ 28-691 and 28-692), approved , 155 Ariz. 408, 747 P.2d 569 (1987). Furthermore, our supreme court has determined that agreement under this statute must be express; that is, a violator "must unequivocally manifest assent to the testing by words or conduct." Carrillo v. Houser , 224 Ariz. 463, ¶ 19, 232 P.3d 1245 (2010).[1] Likewise, the word "agree" is defined as "[t]o unite in thought; to concur in opinion or purpose." Agree , Black's Law Dictionary (10th ed. 2014). And the term "consent," which our supreme court has indicated is relevant to the roadside decision, at least for Fourth Amendment purposes, see Valenzuela , 239 Ariz. 299, 371 P.3d 627, is defined as "voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent." Consent , Black's Law Dictionary (10th ed. 2014). In short, there is little semantic difference between the words "agree" and "consent" in the context of the legal problem here: both events must logically be voluntary to fulfill their meaning.
¶ 14 In view of these authorities, we conclude that the required agreement to testing under § 28-1321 must be voluntary. If it is not, the officer has not secured a statutorily required pre-condition to conduct testing, and the officer has taken the sample unlawfully. See State v. Brita , 154 Ariz. 517, 521, 744 P.2d 429, 433 (App. 1987), approved in part, vacated in part on other grounds , 158 Ariz. 121, 761 P.2d 1025 (1988).
¶ 15 However, in Valenzuela , our supreme court explained that officers were not required to "cease advising arrestees about the law's requirements and the civil consequences for refusal." 239 Ariz. 299, ¶ 28, 371 P.3d 627. The court then set forth the means by which an officer could obtain voluntary consent within the meaning of the Fourth Amendment.[2] Id. ¶ 29. It explained that an officer should "ask whether the arrestee will consent," and if he or she expressly agrees and completes the test, "the officer need not advise the arrestee of the statutory consequences for refusing consent." Id. If the arrestee refuses, however, "the officer should advise the arrestee of the consequences for refusal ... as provided in § 28-1321(B), and then ask again whether the arrestee will consent to testing." Id.
¶ 16 Applying this standard to the officer's conduct in this case, we conclude he obtained a voluntary agreement to conduct the test.[3] The officer did not tell Diaz she *955 was required to submit. As condoned by the court in Valenzuela , he informed her of the consequences of refusal in keeping with the statute. Although he prefaced the admonition with the phrase "Arizona law states," what followed accurately described the contents of the statute.
¶ 17 Given that we address here only a claim of a statutory violation, it follows that we must construe the statute's requirement of a violator's "agreement" to the breath test in the context of the statutory scheme of which the requirement is a part. Specifically, under the framework articulated in §§ 28-1321 and 28-1388, a violator's agreement or refusal occurs in the context of a pre-existing statutory conclusion that the violator has already consented to testing as a matter of state law under penalty of administrative sanctions for nonetheless refusing to submit. For this reason, an officer who accurately advises a violator, by statute, that they have already consented, only informs the decision to agree or refuse: it cannot render that decision involuntary. See Hays , 155 Ariz. at 407, 747 P.2d 564 (describing voluntary as "intelligent or knowing, refusal").
¶ 18 As noted above, our supreme court in Valenzuela , in the context of a more coercive advisory that misleadingly suggested that Arizona law "required" violators to submit to a test, the court suggested two mechanisms that would reduce the risk that violators might erroneously believe they had no voluntary choice but to submit. Id. But, the officer's failure to use either of these mechanisms here-expressly advising Diaz that she possessed a power to refuse or delaying advice of consequences of refusal until a refusal has occurred-does not demonstrate that the instant advisory was coercive or misleading. Contrary to Diaz's suggestion at oral argument in this court, Valenzuela did not mandate a procedure in which the officer must first ask and be refused, then advise the violator of the consequences of refusal. 239 Ariz. 299, ¶ 29, 371 P.3d 627. Indeed, it also endorsed a procedure like that used in South Dakota, in which an officer requests that a driver submit to a test, informing the driver that he or she may refuse and of the consequences of refusal. The officer here apparently chose another option: to accurately advise Diaz of state law.[4] Because the boundaries of a violator's implicit power to refuse the test must be understood in the context of the very statutory scheme that creates it, the advisory here, which correctly and comprehensively describes that scheme, cannot be deemed improper as a matter of state law.[5]
¶ 19 Diaz presents no other facts that would render her agreement to submit to the test involuntary beyond those inherent in any interaction with an officer upon detention for a suspected DUI. See Valenzuela , 239 Ariz. 299, ¶ 11, 371 P.3d 627. The officer neither told her that she was required to take the test, nor misled her as to the consequences of taking or refusing the test.[6] We therefore conclude her agreement was voluntary.
¶ 20 Accordingly, the results were obtained in compliance with the statute and were admissible at trial. The city court erred in concluding otherwise, and although not for the reasons set forth above, the respondent *956 judge properly granted relief to the state. We therefore deny relief.

At oral argument in this court, the state argued that the rule set forth in Hays , that refusal must be voluntary, is no longer the law. It contended that because the statute was amended after Hays to define refusal, our supreme court's decision in Carrillo , issued after the statutory change, controls. See Carrillo , 224 Ariz. 463, ¶¶ 16-17, 232 P.3d 1245 (outlining history of statute). And, according to the state, voluntary refusal is not required because the Carrillo court did not rely on Hays . It contends the Carrillo court defined express agreement with no requirement for a voluntary state of mind. But the court in Carrillo addressed whether officers were authorized to administer a test pursuant to § 28-1321 when an arrestee did not resist the test, but did not "unequivocally manifest assent to the testing by words or conduct." 224 Ariz. 463, ¶¶ 4, 19, 232 P.3d 1245. Thus, the decision centered on the words or conduct necessary to manifest agreement; whether or not that agreement was also required to be voluntary was not before the court.

Although we do not expressly decide here whether the standard for voluntariness under the statute is coextensive with Fourth Amendment principles, in view of our supreme court's conclusions in Valenzuela , the standard under the statute is not a higher one.

Hereafter, we use the statute's own terminology for the violator's implicit power to decide whether to submit to testing as "agreeing" or refusing to "agree" to testing. We do so to avoid analytical confusion either with the separate statutory assumption that a driver has "consented" to testing or with a violator's federal constitutional right to refuse "consent" to a search. In so doing, we recognize the semantic similarity, as described above, of the words "agree" and "consent."

That the officer did not follow the court's suggestions in Valenzuela as to this affidavit is no surprise. This affidavit was generated before the Valenzuela opinion was issued and was thereafter replaced by another.

We address here the implicit statutory power, under Arizona law, to either agree to, or refuse, testing of blood or breath. We do not address whether the instant affidavit, when used to secure a blood draw, might violate an arrestee's right under the Fourth Amendment of the United States Constitution to refuse consent to a search of their body for evidence. In such an analysis, some correct statements as a matter of state law might conceivably be viewed as coercive or misleading in evaluating an arrestee's Fourth Amendment right to refuse consent.

In its ruling on the motion to suppress, the city court found the officer had been "in uniform and armed," but "did not draw or otherwise bring attention to his weapon." It noted Diaz "had been detained for about 25 minutes" at the time she agreed to the test, she had been read the admonition, and "no other elements of coercion [had been] present."