IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ALEXIS MARIE DIAZ,**
*Petitioner,*

*v.*

**HON. DEBORAH BERNINI, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA,
IN AND FOR THE COUNTY OF PIMA,**
*Respondent,*

and

**THE STATE OF ARIZONA, TUCSON CITY PROSECUTOR'S OFFICE,**
*Real Party in Interest.*

No. CR-18-0250-PR
Filed February 28, 2019

Special Action from the Superior Court in Pima County
The Honorable Deborah Bernini, Judge
No. CR20173611-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
244 Ariz. 417 (App. 2018)
**VACATED**

COUNSEL:

Mary C. Trejo, Chief Public Defender, Tucson Public Defender's Office, Kristina Bohn (argued), Deputy Public Defender, Tucson, Attorneys for Alexis Marie Diaz

Michelle L. Behan (argued), Behan Ramsell, P.L.L.C., Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Michael G. Rankin, Tucson City Attorney, Alan L. Merritt, Deputy City Attorney, Jennifer Stash, Mari L. Worman (argued), Prosecuting City Attorneys, Tucson, Attorneys for State of Arizona and Tucson City Prosecutors Office

---

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES TIMMER, BOLICK, GOULD, and LOPEZ joined.

---

JUSTICE PELANDER, opinion of the Court:

¶1        Under Arizona's implied consent statute, a law enforcement officer may obtain a blood or breath sample from a person arrested for driving under the influence ("DUI") only if the arrestee expressly agrees to the test. We today hold that, apart from any constitutional considerations, the statute itself does not require that the arrestee's agreement be voluntary.

## I.

¶2        On April 2, 2016, Alexis Diaz was arrested and later charged with DUI. After the arrest, the investigating officer read her the following "admin per se" admonition:

> Arizona law states that a person who operates a motor vehicle at any time in this state gives consent to a test or tests of blood, breath, urine or other bodily substances for the purpose of determining alcohol concentration or drug content. The law enforcement officer is authorized to request more than one test and may choose the types of tests.
>
> If the test results are not available, or indicate an alcohol concentration of 0.08 or above . . . then your Arizona driving privilege will be suspended for not less than 90 consecutive days.
>
> If you refuse, or do not expressly agree to submit to, or do not successfully complete the tests, your Arizona driving privilege will be suspended. The suspension will be requested for 12 months, or for two years if you've had a prior implied-consent refusal within the last 84 months.
>
> Will you submit to the tests?

Diaz agreed and submitted to a breath test that revealed an alcohol concentration above the legal limit.

¶3        In municipal court, Diaz moved to suppress the breath test result, arguing her consent was not voluntary under either the Fourth Amendment or A.R.S. § 28-1321, Arizona's implied consent statute.  The court deemed the admonition coercive, ruled that Diaz's consent to testing was involuntary, found the good-faith exception to the exclusionary rule inapplicable, and granted her motion to suppress.  On appeal, the superior court affirmed the municipal court's involuntariness finding but found the good-faith exception applicable and therefore reversed the suppression order.

¶4        The court of appeals accepted jurisdiction of Diaz's ensuing special action petition but denied relief for reasons different from the superior court's.  *Diaz v. Bernini*, 244 Ariz. 417, 418 ¶ 1, 419 ¶ 5 (App. 2018).  Finding any federal or state constitutional challenge to the warrantless breath test foreclosed by prior case law, the court of appeals addressed whether Arizona's implied consent statute required suppression.  *Id.* at 419-20 ¶¶ 6–9 (citing *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2184 (2016), and *State v. Navarro*, 241 Ariz. 19, 21 ¶ 4 (App. 2016)).  The court held that a DUI arrestee's "agreement to testing under § 28-1321 must be voluntary" and "[i]f it is not, the officer has not secured a statutorily required pre-condition to conduct testing" and "has taken the sample unlawfully."  *Id.* at 421 ¶ 14.  But concluding that the officer "accurately advise[d] Diaz of state law," and finding no facts suggesting that Diaz was coerced or misled to submit to testing, the court held that "her agreement was voluntary."  *Id.* at 422 ¶¶ 18–19.  Accordingly, the breath test "results were obtained in compliance with the statute and were admissible at trial."  *Id.* ¶ 20.

¶5        In her petition for review, Diaz challenges the court of appeals' determination that the State met its burden of proving voluntary consent and argues that, contrary to the superior court's ruling, the municipal court correctly found the good-faith exception inapplicable (an issue the court of appeals did not reach).  In its cross-petition for review, the State argues the court of appeals erred in holding that § 28-1321 requires "voluntary" agreement to submit to breath tests and that if that requirement is not met, evidence of breath test results is inadmissible in a criminal DUI prosecution under A.R.S. § 28-1381.  We granted review of the petition and cross-petition because the issues raised are of statewide importance and recurring.  This Court has jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶6        Preliminarily, we agree with the court of appeals that this case does not implicate any constitutional issues.  "[T]he administration of a breath test is a search" subject to Fourth Amendment constraints.  *Birchfield*, 136 S. Ct. at 2173.  A warrantless search is deemed reasonable under the Fourth Amendment, however, if "one of a few

well-established exceptions [to the warrant requirement] applies." *State v. Valenzuela* (*Valenzuela II*), 239 Ariz. 299, 302 ¶ 10 (2016) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Under the search-incident-to-arrest exception, the United States and Arizona Constitutions permit law enforcement officers to administer warrantless breath tests to lawfully arrested DUI suspects. *Birchfield*, 136 S. Ct. at 2184 (holding that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving"); *Navarro*, 241 Ariz. at 21 ¶ 4 (concluding that for purposes of article 2, section 8 of the Arizona Constitution "a search incident to a lawful arrest does not require any warrant" and "non-invasive breath tests for DUI arrestees fall within this exception").

¶7        A warrantless search is also reasonable for Fourth Amendment purposes if the subject voluntarily consents. *Birchfield*, 136 S. Ct. at 2185. But *Birchfield* makes clear that because a warrantless breath test is "a permissible search incident to [a suspect's] arrest for drunk driving," the government need not establish under the totality of circumstances that the suspect voluntarily consented to the test. *Id.* at 2186.

¶8        Based on *Birchfield* and *Navarro*, the court of appeals correctly rejected Diaz's argument that her voluntary consent to the breath test was constitutionally required. *Diaz*, 244 Ariz. at 419–20 ¶¶ 6–8. Therefore, like the court of appeals, we limit our analysis to § 28-1321.

### III.

¶9        Commonly referred to as Arizona's implied consent law, § 28-1321 provides in part:

> A.        A person who operates a motor vehicle in this state gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed in violation of this chapter or § 4-244, paragraph 34 while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle in this state . . . [w]hile under the influence of intoxicating liquor or drugs.

> .    .    .

> B.        After an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed . . . and if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended . . . unless the violator expressly agrees to submit

> to and successfully completes the test or tests. A failure to expressly agree
> to the test or successfully complete the test is deemed a refusal.

The statute further provides that "[i]f a person under arrest refuses to submit" to the designated test, it may not be given except pursuant to a search warrant or as provided by the medical-purpose exception in A.R.S. § 28-1388(E), and the violator's license must be surrendered. § 28-1321(D)(1), (2)(c). The purpose of § 28-1321 is to "remove from Arizona highways those drivers who may be a menace to themselves and others because of intoxication." *Carrillo v. Houser*, 224 Ariz. 463, 465 ¶ 13 (2010) (quoting *Sherrill v. Dep't of Transp.*, 165 Ariz. 495, 498 (1990)).

¶10 The parties dispute whether § 28-1321 provides greater protection than the Fourth Amendment by requiring DUI arrestees to voluntarily agree to breath testing. The issue is whether the statute requires that an arrestee "voluntarily consent" (as that phrase is understood for Fourth Amendment purposes) to a breath test even though the Fourth Amendment itself does not require such consent. Whether § 28-1321 imposes a voluntariness requirement, as Diaz contends and the court of appeals held, is a question of statutory construction which we review de novo. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). If, as here, the statute is subject to only one reasonable interpretation based on its words and context, we apply it without further analysis. *Id.*

¶11 Citing *Carrillo*, Diaz argues that § 28-1321 "unquestionably imposes a consent requirement." And relying on *State v. Butler*, 232 Ariz. 84 (2013), she contends that requirement "is governed not just by the statute, but also by traditional Fourth Amendment analysis" requiring that the consent be voluntary. Neither those cases nor the statute itself supports this argument.

¶12 In *Carrillo*, based on the statute's requirement "that an arrestee 'expressly agree' to warrantless testing," 224 Ariz. at 466 ¶ 19 (quoting § 28-1321(B)), this Court held that § 28-1321 "generally does not authorize law enforcement officers to administer the test without a warrant unless the arrestee expressly agrees to the test," *id.* at 463 ¶ 1. "[T]o satisfy the statutory requirement," we said, "the arrestee must unequivocally manifest assent to the testing by words or conduct." *Id.* at 467 ¶ 19. We resolved the case solely "as a matter of statutory interpretation" and did "not address any constitutional issues," clearly implying that the statute and constitution involve distinct inquiries and impose different requirements. *Id.* ¶ 21; *see also Butler*, 232 Ariz. at 88 ¶ 16 (noting that *Carrillo* turned solely "on statutory grounds and did not address any constitutional issues"). Neither § 28-1321 nor *Carrillo* mentions the term "voluntary," and they do not suggest that the statutory requirement of express agreement equates to or necessarily implies a voluntary consent requirement.

¶13 Nor does *Butler* support any such statutory requirement. There we held that "independent of § 28-1321, the Fourth Amendment requires an arrestee's consent to

be voluntary to justify a warrantless blood draw." *Butler*, 232 Ariz. at 88 ¶ 18. This holding implies that "voluntary consent" for Fourth Amendment purposes is distinct from the statutory requirement of an arrestee's express agreement. Unlike this case, *Butler* and *Carrillo* involved blood tests. And unlike *Carrillo*, *Butler* dealt solely with constitutional issues in that context and did not suggest, let alone hold, that as a statutory matter lawful, warrantless testing under § 28-1321 requires an arrestee's voluntary consent. Likewise, *Valenzuela II* involved only a constitutional, not statutory, issue and held that under the Fourth Amendment, "a trial court should examine the totality of the circumstances to decide whether consent was voluntary, even when given after a law enforcement officer's assertion of lawful authority to search." 239 Ariz. at 301 ¶ 2, 305-06 ¶ 21. Although *Valenzuela II* involved both blood and breath tests, that case focused only on constitutional principles and, like *Butler* and *Carrillo*, preceded *Birchfield*.

¶14 In support of its holding that "the required agreement to testing under § 28-1321 must be voluntary," the court of appeals cited *State v. Superior Court* (*Hays I*), 155 Ariz. 403 (App. 1986), *aff'd*, (*Hays II*), 155 Ariz. 408 (1987). *Diaz*, 244 Ariz. at 421 ¶¶ 13–14. Diaz neither cites nor relies on that case, which at any rate is inapposite. *Hays I* involved a prior version of the implied consent law which provided that "[t]he issue of refusal shall be an issue of fact and will be determined by the trier of fact in all cases." *Hays I*, 155 Ariz. at 406 (quoting A.R.S. § 28-692(K) (1986)). The court of appeals stated that "implicit" in that statute was "a voluntary, i.e., intelligent or knowing, refusal"; held that "a preliminary hearing on refusal is permissible"; but determined that the trial court was "not permitted to delve into the voluntariness of the [DUI defendant's] refusal." *Id.* at 407–08. On review, this Court merely agreed that the defendant "was not entitled to a voluntariness hearing," and stated that any evidence bearing on her refusal went to the weight, not admissibility, of the evidence in a criminal DUI prosecution. *Hays II*, 155 Ariz. at 412.

¶15 The next year, the legislature changed the definition of "refusal" from a specific question of fact to a capacious term encompassing anything short of an express agreement. *See Carrillo*, 224 Ariz. at 466 ¶ 16 (tracing § 28-1321's evolution). *Hays I*'s statement about what the former statute implied does not correlate to current law on refusal—an arrestee is legally deemed to refuse if she fails to expressly agree to or successfully complete the test(s). *See* § 28-1321(B). No voluntariness inquiry regarding an arrestee's refusal is needed or required under the current statute, and *Hays I* has no bearing on whether that statute requires a showing of voluntary consent to testing.

¶16 The court of appeals' resort to dictionary definitions of "agree" and "consent" to support its holding is also unpersuasive. *Diaz*, 244 Ariz. at 421 ¶ 13 (finding "little semantic difference" between those terms and concluding that both "must logically be voluntary to fulfill their meaning"). Section 28-1321 permits arrestees to either "expressly agree" or "refuse" testing—it does not require that arrestees "consent" to testing. This distinction is meaningful because, as relevant here, the word "consent" is

found only in subsection (A), under which a DUI arrestee "gives consent" to testing by operating a motor vehicle in this state. At most, then, the definition of "consent" is relevant only to determine if an arrestee's initial act implying consent—driving—requires voluntariness. *Cf. State v. Wulff*, 337 P.3d 575, 582 (Idaho 2014) (reviewing a constitutional challenge to test results from a DUI blood draw and finding that the initial decision to drive must be made voluntarily). The court of appeals erred by converting the word "agree" in subsection (B) to "consent" and then implying for the latter a voluntariness requirement not found in the statute. *See Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249–50 ¶ 8 (App. 2006) ("[W]e assume that when the legislature uses different language within a statutory scheme, it does so with the intent of ascribing different meanings and consequences to that language."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").

¶17       In short, dictionary definitions are neither helpful nor necessary here. Section 28-1321's text does not contain the term "voluntary" and requires in subsection (B) only that the arrestee "expressly agree[]" to testing, a phrase that we have already defined as "unequivocally manifest[ing] assent to the testing by words or conduct." *Carrillo*, 224 Ariz. at 467 ¶ 19. We therefore hold that the statutory requirement of express agreement to testing does not equate to or necessarily imply a voluntary consent requirement.

¶18       Diaz argues that requiring voluntary consent for a warrantless blood test but not for a warrantless breath test creates an illogical and unworkable "two-tiered analysis" that is unsupported by the statute. But that dichotomy is based not on § 28-1321, which treats both tests alike, but rather on separate constitutional considerations and requirements. The Fourth Amendment, not the statute, requires voluntary consent or exigent circumstances for a warrantless blood test because it is "significantly more intrusive than blowing into a tube." *Birchfield*, 136 S. Ct. at 2178; *see also Missouri v. McNeely*, 569 U.S. 141, 148 (2013); *Butler*, 232 Ariz. at 87 ¶ 10. Breath tests, in contrast, involve "negligible" physical intrusion and "do not 'implicat[e] significant privacy concerns.'" *Birchfield*, 136 S. Ct. at 2176 (alteration in original) (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 626 (1989)); *cf. Campbell v. Superior Court*, 106 Ariz. 542, 547 (1971) (noting the minimal inconvenience of breath testing).

¶19       Diaz acknowledges that she "does not assert a right to refuse, and she did not refuse" the officer's request to submit to a breath test. *See Carrillo*, 224 Ariz. at 465 ¶ 11 ("The implied consent noted in [§ 28-1321(A)] statutorily disclaims any asserted 'right' by an arrestee to refuse testing."). And she concedes that if the statute contains no voluntariness requirement, as we conclude, she "expressly agree[d] to the test" by her words and conduct. *Id.* at 463 ¶ 1. For purposes of § 28-1321, the State was not required to also show that Diaz voluntarily consented to the test.

¶20 Accordingly, we do not address Diaz's argument that the court of appeals erroneously concluded that "her agreement was voluntary," *Diaz*, 244 Ariz. at 422 ¶ 19, or Diaz's challenges to the admonition the officer recited in obtaining her consent to the breath test and to the superior court's application of the good-faith exception to the exclusionary rule, *see State v. De Anda*, No. CR-18-0286-PR, slip op. at 2 ¶ 1 (Ariz. Feb. 28, 2019) (holding that officer's recitation of admin per se form identical to that used here "did not in itself render [DUI arrestee's] consent [to blood draw] involuntary"). Nor do we address the State's assertion that any violation of § 28-1321 would affect only administrative license-suspension proceedings and not a criminal DUI prosecution under § 28-1381.

¶21 Finally, we express no opinion on any hypothetical scenarios in which allegedly involuntary breath tests might raise statutory-compliance issues or implicate due process or other constitutional concerns. *Cf. State v. Berg*, 76 Ariz. 96, 97–98 (1953) (finding, in an advisory opinion based on an "incomplete and unsatisfactory" record and issued before the Fourth Amendment was applied to the states through due-process incorporation and before enactment of Arizona's implied consent law, evidence of breath test results constitutionally admissible even though sample was "forcibly taken" from the defendant over his objection). In rejecting a "voluntary consent" requirement for purposes of § 28-1321, however, we do not suggest that arrestees can, consistent with the statute, be compelled to submit to a breath test or even that mere acquiescence (arguably the circumstances in *Carrillo*) would satisfy the "expressly agrees" requirement in § 28-1321(B).

## IV.

¶22 For the reasons set forth above, we affirm the superior court's ruling that reversed the municipal court's suppression order, vacate the court of appeals' opinion, and remand the case to the municipal court for further proceedings consistent with this opinion.